Harvey **RAPPAPORT,** Individually and as next friend of Anita Louise Rappaport, a minor, et al., Plaintiffs,

v.

**LITTLE LEAGUE BASEBALL, INCORPORATED,** a federally chartered corporation, et al., Defendants.

Civ. A. No. 74–46.

United States District Court, D. Delaware.

Jan. 8, 1975.

John J. Schmittinger, Schmittinger & Rodriguez, Dover, Del., and Charles McKelvey, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., of counsel, for defendants.

Arlen B. Mekler and Jack R. Salley, Wise, Lindh, Mekler & Evans, Wilmington, Del., for plaintiffs.

LATCHUM, Chief Judge.

The plaintiffs, young girls and their parents, filed suit on March 13, 1974 against the defendants, Little League Baseball, Inc. ("League") and selected local charter members of the League, seeking to have the defendants' policy of excluding girls from Little League baseball teams declared unconstitutional. The plaintiffs further sought to enjoin the League from revoking the charters of the local members for including female participants in their individual programs and in addition sought a mandatory injunction commanding the defendants to permit girls to play on the defendants' Little League teams. Finally, the plaintiffs asked for attorneys'

fees, litigation expenses and punitive damages.

The suit was brought under 42 U.S.C. §§ 1983 and 1985(3) and jurisdiction was based on 28 U.S.C. §§ 1343(3) and (4).

On June 12, 1974 the League issued a public statement that it would, as of that date, permit girls to register in the League's program on an equal basis with boys. The defendants thereafter moved to dismiss the suit on the ground that all the issues had become moot.[1]

Oral argument was heard by the Court and an order was issued denying defendants' motion, but granting the defendants leave to renew their motion upon submission of a more substantial and complete record.[2] In response to that order defendants have now submitted additional affidavits and have renewed their original motion to dismiss for mootness.[3]

The plaintiffs also filed a motion for summary judgment apparently based on the argument that since the League has changed its policy with respect to girls, no material fact remains in issue.[4]

I. Plaintiffs' Motion For Summary Judgment.

■ Plaintiffs' summary judgment motion is totally unfounded. The defendants' change in policy with respect to the participation of girls in their programs can not be construed as an admission that their previous policy was unlawful or injurious to the plaintiffs or even that there was a valid cause of action asserted under 42 U.S.C. §§ 1983 and 1985(3). Hence, no grounds exist for granting the plaintiffs' motion.

II. Defendants' Motion To Dismiss.

■ This Court has the duty to dismiss an action as moot if changing conditions transform the question presented by the action from a concrete legal issue into an abstraction since the resolution of such a question would in effect require an advisory opinion that is beyond the constitutional function of this Court to render. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 959, 22 L.Ed.2d 113 (1969).

■ In the present case, the plaintiffs' request for declaratory and injunctive relief was for the purpose of prospectively assuring that girls would be allowed to participate in the defendants' Little League programs on an equal basis with boys. As stated above, girls are no longer excluded from the defendants' programs. While the mere cessation of allegedly illegal conduct does not require that a case seeking equitable or declaratory relief with respect to that conduct be dismissed, it may be dismissed if the defendants can demonstrate that there is no reasonable expectation that the conduct will be resumed. United States v. W. T. Grant Co., 345 U.S. 629, 632–633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Thus, the equity and declaratory aspects of the present action will be dismissed if the Court finds that the defendants have in good faith permanently ceased pursuing a policy of excluding girls from their Little League programs.

Turning first to the defendant League, the Court is satisfied that there is little probability that the League will return to a policy of excluding girls from its program. A resolution of the Board of Directors of the League,[5] a press release by the League,[6] national press coverage of the League's decision,[7] notification of all members of the League of the change in policy,[8] amend-

---

1. Docket Item 15.

2. Docket Item 19.

3. Letter to Court dated October 8, 1974.

4. Docket Item 25.

5. Docket Item 15, Ex. A.

6. Docket Item 15, Ex. B.

7. Docket Item 15, par. 9.

8. Docket Item 26, par. 27.

548

ment of the League's regulations [9] and the sworn assurance from the President of the League [10] convince the Court that the League is sincere in its intent to admit girls into its program on an equal basis with boys.

The other defendants, who are local charter members of the League, have each submitted affidavits by their presidents indicating that girls are now allowed to participate in all aspects of their Little League programs on an absolute equal basis with boys and that appropriate public notices will be distributed expressly stating that girls are now eligible to participate in these programs.[11] As a result the Court is convinced that these defendants are also sincere in their intent to admit girls into their programs on an equal basis with boys.

Since all the defendants have given public assurance that girls will be allowed to participate in their Little League programs on an equal basis with boys, the question of the constitutionality of their previous policy is rendered moot and will be dismissed from this action.

III. Punitive Damages.

■ In Paragraph V of the prayers of their amended complaint,[12] the plaintiffs asked for "punitive damages in an amount to be determined by the Court" and, of course, the fact that the defendants changed their policy with respect to the participation of girls in their programs does not foreclose the possibility that the defendants' actions before that change in policy might warrant an award of punitive damages to the plaintiffs.

■ However, to be entitled to a recovery of punitive damages there must be more than a mere mention of puni-

tive damages in the prayers of a complaint. Nagel v. Prescott & Company, 36 F.R.D. 445, 449–450 (N.D.Ohio 1964); 22 Am.Jur.2d § 294, p. 390. There must be an indication of bad faith by the defendants sufficient to justify such an award. Koppell v. Levine, 347 F.Supp. 456, 465 (E.D.N.Y.1972); *also see* Adickes v. Kress & Co., 398 U.S. 144, 233, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Justice Brennan's opinion) and Schwab v. First Appalachian Insurance Co., 58 F.R.D. 615, 619 (S.D.Fla.1973).

■ The record in the present case is devoid of any indication of bad faith on the part of the defendants. Instead, the complaint alleges that the defendants were acting in accordance with the League's congressionally issued federal charter which expressly provided that the League was established for *boys*.[13] As a consequence the plaintiffs' unsupported prayer for punitive damages will be denied. Caplin v. Oak, 356 F.Supp. 1250, 1259 (S.D.N.Y.1973); *Koppell, supra*, 347 F.Supp. at 465.

IV. Litigation Expenses and Attorneys' Fees.

The plaintiffs have also requested that they be awarded litigation expenses and attorneys' fees in the event this action is dismissed for mootness.

■ The general rule is that litigation expenses are not taxable against a party unless there is a federal statute, rule of court, custom, practice or usage which provides authority for such taxation, 6 Moore's Federal Practice, ¶ 54.-77[1], p. 1701, and the plaintiffs in this action have come forward with no such authority which would entitle them to general litigation expenses.

■ With respect to the particular litigation expenses of attorneys' fees, under federal practice the general rule

9. Docket Item 26, par. 3.

10. Docket Item 17.

11. Docket Items 21, 22, 23 & 24.

12. Docket Item 5.

13. Public Law 88–378, 88th Congress, H.R. 9234, July 16, 1964. See note 15, infra.

is that attorneys' fees are not taxable as costs, 6 Moore's Federal Practice, ¶ 54.-77[2], p. 1704, although in the exercise of their equitable powers federal courts may award attorneys' fees when the interest of justice so requires. Goode v. Rizzo, 506 F.2d 542, (C.A. 3, 1974) at p. 549.

█ In *Goode,* at p. 549, the Third Circuit Court of Appeals sets forth three general categories of situations when the equitable power to award attorneys' fees is generally exercised: *First,* in the instance of bad faith, vexation, or oppression whereby the punitive aspects of the award predominate;. *Second,* in instances where a common fund has been created or a definable class benefits from the suit in such a way that an award of fees enables the Court to spread expenses among all who benefit; and *Third,* where the "private attorney general" theory may have application.

In the present case, the Court has already determined that on the present record there is no allegation or showing of bad faith and thus there is no basis to support a punitive award of attorneys' fees. Furthermore, there is no common fund or class beneficiaries which may jointly absorb the award. Thus, the plaintiffs base their request for attorneys' fees squarely on the "private attorney general" theory.

█ The "private attorney general" theory is designed to encourage private party plaintiffs to vindicate policies which Congress has considered to be of the *highest* priority. *Goode,* at p. 549: Wilderness Society v. Morton, 495 F.2d 1026, 1029 (C.A.D.C., 1974), cert. granted —— U.S. ——, 95 S.Ct. 39, 42 L.Ed.2d 47; Brandenburger v. Thompson, 494 F.2d 885, 888 (C.A. 9, 1974); Jinks v. Mays, 350 F.Supp. 1037, 1038 (N.D.Ga. 1972); and Lyle v. Teresi, 327 F.Supp. 683, 685 (D.Minn.1971). Hence, in order for the plaintiffs to invoke this the-

ory, the Court must be convinced that a policy is involved which Congress accords the highest priority, and that an award of attorneys' fees will further encourage the vindication of that policy. See Brewer v. School Board of City of Norfolk, Virginia, 456 F.2d 943, 950 n. 22 (C.A. 4, 1972), cert. denied 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149 (1972); La Raza Unida v. Volpe, 57 F. R.D. 94, 98 (N.D.Cal.1972), aff'd. 488 F.2d 559 (C.A. 9, 1973).

If a Civil Rights suit is successfully prosecuted to a final judgment there can be no doubt that the plaintiff's position may be considered consistent with Congressional policy and the Court has the benefit of a completed record to make the determination of whether or not the suit vindicated a strong Congressional policy of the highest priority and whether or not an award of attorneys' fees would further encourage vindication of that policy. See *Jinks* and *Lyle, supra.* However, when such suits are prematurely terminated by settlement or mootness there is no judicial determination to assure that the plaintiff's position was consistent with any Congressional policy and a complete record is naturally not available. See *Wilderness* 495 F.2d at 1034 and *Brandenburger, supra.*[14]

In *Wilderness,* the Court found from the available record that the suit was a catalyst to ensure that the Department of the Interior draft an impact statement as mandated by law. In *Brandenburger* the suit apparently caused the State of Hawaii to abandon a condition of eligibility for state welfare benefits which was substantially identical to a condition struck down two years earlier by the United States Supreme Court. Thus, in both cases the courts had a substantial basis for concluding that the plaintiffs' suits were not only consistent with Congressional policy but also advanced Congressional policies of the

14. Also see Kahan v. Rosenstiel, 424 F.2d 161, 167 (C.A.3, 1970) for a discussion of the award of attorneys' fees in settled cases under the "common benefit" doctrine.

highest priority even though neither suit was prosecuted to final judgment.

In the present case, there was no Congressional mandate that girls be allowed to participate in the defendants' programs [15] and the Court is aware of no previous Supreme Court decision striking down an all-boys athletic program identical to the defendants' program. To the contrary, in the two federal suits brought to this Court's attention which concerned the subject of girls' participation in Little League baseball programs, the plaintiffs were unsuccessful in their attempt to gain female participation in all-male programs.[16]

■ Thus, without intending to make any definitive determination of what the outcome of this suit would have been had it not become moot,[17] the Court is not persuaded that this suit vindicated a Congressional policy of the highest priority which is necessary to invoke the "private attorney general" theory. Consequently, the Court, in its discretion, concludes that the present case is not one in which the award of attorneys' fees should be granted. In ad-

15. For over ten years the defendant League's federal charter indicated a Congressional policy that could reasonably be interpreted as intending to create a program for *boys* only. It read:

"Sec. 3. The objects and purposes of the corporation shall be—

(1) To promote, develop, supervise, and voluntarily assist in all lawful ways the interest of *boys* who will participate in Little League baseball.

(2) To help and voluntarily assist *boys* in developing qualities of citizenship, sportsmanship, and manhood.

(3) Using the disciplines of the native American game of baseball, to teach spirit and competitive will to win, physical fitness through individual sacrifice, the values of teamplay and wholesome well-being through healthful and social association with other youngsters under proper leadership." 78 Stat. 325 (1964). (Emphasis supplied).

After institution of this suit, the League sought an amendment to its charter to eliminate any possible legal impediment in the original charter to the participation of girls in the League's program. As a result, Congress has passed an amendment which clearly does not prohibit girls from the League's program. Pub.L. 93–551, 93d Congress, H.R. 8864, Dec. 26, 1974. See 120 Cong.Rec. H10725 (Daily ed. November 18, 1974).

16. Magill v. Avonworth Baseball Conference, 364 F.Supp. 1212 (W.D.Pa.1973) remanded to determine if moot 497 F.2d 921 (C.A.3, 1974) and Washs v. Newton East Little League, Civil Action No. 72–1300–G (D. Mass. May 15, 1972).

17. There is a very serious question left unresolved in this mooted case, viz., whether the plaintiffs have asserted valid causes of action under 42 U.S.C. §§ 1983 and 1985(3). These statutes have been interpreted to require the defendants to have been acting "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory," Henig v. Odorioso, 385 F.2d 491, 494 (C.A.3, 1967), cert. den. 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166, Reh. den. 391 U.S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671; Williams v. Yellow Cab Co., 200 F.2d 302 (C.A.3, 1953), cert. den. 346 U.S. 840, 74 S. Ct. 52, 98 L.Ed. 361, or there must be some showing under § 1985(3) that the defendants, by operating an all-boys program, were motivated by a "class-based, invidiously discriminatory animus" with the aim of depriving the "equal enjoyment of rights secured by the law to all." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L. Ed.2d 338 (1971). From the facts developed in this case there is scant showing that defendants were engaged in "state action" as required by § 1983. Jackson v. Metropolitan Edison Co., —— U.S. ——, 95 S.Ct. 449, 42 L.Ed.2d 47 (1974); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 171–179, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In addition there is no showing, as required by § 1985(3) that the defendants were motivated by a class-based, invidiously discriminatory intent to deprive girls of the *equal enjoyment of rights secured by law to all.* See Robinson v. McCorkle, 462 F.2d 111, 113 (C.A.3, 1972) cert. den. 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492. This probably occurred because a real question exists whether playing Little League baseball by mixed-sex teams is a right guaranteed to all either under the equal protection of the laws or of equal privileges and immunities under the laws as required by § 1985(3).

dition, the plaintiffs' request for litigation expenses and suit costs will also be denied.

### ORDER

For the foregoing reasons, it is ordered

1) that plaintiffs' motion for summary judgment is hereby denied,

2) that defendants' motion to dismiss for mootness is hereby granted, and

3) that plaintiffs' request for punitive damages, litigation expenses, attorneys' fees and court costs is hereby denied.