**Todd GORMAN, a minor child, by his next friends, Franklin Gorman and Carol Gorman; and Franklin Gorman and Carol Gorman, individually and in their own right, Plaintiffs,**

v.

**SAF–T–MATE, INC., a Michigan Corporation, and North Harbor, Inc., an Indiana Corporation d/b/a North Harbor Marine, Defendants.**

Civ. No. F 80–147.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

May 14, 1981.

William F. McNagny and James P. Fenton, Fort Wayne, Ind., J. Daniel Brinkerhoff, Garrett, Ind., Gerald M. McNerny, Butler, Ind., for plaintiffs.

William E. Borror, Fort Wayne, Ind., for North Harbor, Inc.

Milford M. Miller, Fort Wayne, Ind., for Saf-T-Mate, Inc.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, Chief Judge.

This cause is before the court on the September 12, 1980 motion to dismiss filed by defendant Saf-T-Mate, Inc. The motion challenges plaintiffs' complaint on a variety of grounds. One of those challenges raises the question whether the private cause of action created by the Magnuson-Moss Warranty Act (Warranty Act), 15 U.S.C. § 2301 *et seq.*, for breach of consumer product warranties includes damage claims for personal injury. This court concludes that the cause of action created by the federal statute does not, with certain exceptions, extend so far. For the reasons set forth below, the instant motion will be granted in part and denied in part and plaintiffs' claims against defendant North Harbor, Inc., will be dismissed unless the plaintiff is able to amend the complaint consistent with this opinion.

In this action, plaintiffs Todd Gorman, a minor child, and his parents seek to recover at least $750,000 in compensatory damages, together with punitive damages for personal injuries which Todd allegedly sustained as a result of a misadventure involving a motorboat manufactured by the defendant Saf-T-Mate and sold to the Gormans by the defendant North Harbor. Saf-T-Mate is a Michigan corporation with headquarters in Cadillac, Michigan, and North Harbor is an Indiana corporation with headquarters in Fort Wayne, Indiana; plaintiffs are citizens of Indiana.

There are five counts in the complaint. Count I alleges breach of express and implied warranties of merchantability and fitness for ordinary use with regard to the motorboat. Count II sounds in strict liability in tort. Count III alleges negligent design and manufacture. Count IV alleges breach of warranty of fitness for a particular purpose. Count V alleges defendants misrepresented the fitness of the boat.

Plaintiffs seek to maintain jurisdiction on the basis of diversity of citizenship and also on the basis of § 110(d) of the Warranty Act, 15 U.S.C. § 2310(d). Saf-T-Mate's motion to dismiss raises the following issues: (1) whether the Warranty Act affords a basis for the recovery of personal injury damages; (2) whether plaintiffs may recover attorney fees under the Warranty Act; (3) whether the allegations in the complaint are insufficient to support the prayers for punitive damages; (4) whether the count alleging misrepresentation fails to state a claim upon which relief can be granted; and (5) whether the implied warranty claims must be dismissed as duplicative of the strict products liability claims.

## I. MAGNUSON-MOSS CAUSES OF ACTION

Since there is no diversity of citizenship among plaintiffs and the retailer defendant, North Harbor, because all are citizens of Indiana, plaintiffs' claims against North Harbor must be dismissed unless the Magnuson-Moss Act affords an alternative jurisdictional basis for one or more of those claims. On August 8, 1980, North Harbor filed a motion to dismiss addressed to the obvious lack of diversity of citizenship among plaintiffs and North Harbor. That motion did not address the allegations of jurisdiction under the Magnuson-Moss Act and was, therefore, denied. In the instant motion, the other defendant, Saf-T-Mate, argues that the Warranty Act does not create a federal cause of action allowing plaintiffs to sue for personal injury damages. Although Saf-T-Mate proffers this argument on its own behalf, dismissal of the Warranty Act claims would not require a complete dismissal as to Saf-T-Mate, given the apparent alternative jurisdictional basis of diversity of citizenship for at least some of plaintiffs' claims against Saf-T-Mate. However, jurisdiction as to the Indiana defendant, North Harbor, does turn on whether plaintiffs have stated any claims under the Act.

Upon initial examination, the complaint in this case might appear to satisfy the requirements for federal court *jurisdiction* under the Act. The amount in controversy is alleged to be in excess of $50,000, and the plaintiffs' injuries allegedly arise out of breach of warranties pertaining to a consumer product. The pertinent issue, however, is whether the Act creates a *remedy* for personal injury claims which happen to be susceptible of being alternatively stated in breach of warranty or in strict products liability in tort.

If such personal injury claims are cognizable under the Act, numerous products liability actions which historically have been confined largely to the state courts could be brought in federal court regardless of the locus of citizenship of the parties. This would be a major expansion of the jurisdiction of the federal district courts. Unless the authors of federal legislation clearly convey their meaning, there is a presumption against construing a statute so as to significantly change the federal-state jurisdictional balance. *United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971); *Apex Hosiery v. Leader*, 310 U.S. 469, 513, 60 S.Ct. 982, 1002, 84

L.Ed. 1311 (1940). This rule of interpretation calls for a very thorough examination of the statute.

That task, however, poses a very considerable challenge:

A literal reading of the Magnuson-Moss Act is only a departure point for giving meaningful content to the statute which has been variously described as "disappointing", "opaque", and a product of "poor drafting". A review of the legislative history gives but limited solace. That review is the legal equivalent of an archeological dig. Various consumer warranty bills were pending before the House and Senate for four years, during which each body defined, discarded, reintroduced and redefined concepts which in some fashion or another are related to the enacted legislation. Some provisions in the Act are vestigial reminders of concepts buried but not totally forgotten during the on-going legislative process. Both proponents and opponents of an expansive interpretation have cited compelling, to them, legislative history only dimly related to the language which finally emerged as law.

*Skelton v. General Motors Corp.*, 500 F.Supp. 1181, 1184 (N.D.Ill.1980) (footnotes omitted).

The Warranty Act, 15 U.S.C. §§ 2301 to 2312, applies principally to products which sell at retail for more than five dollars and are accompanied by written warranties. The Act does not require written warranties, but if they are given the Act imposes a wide variety of requirements upon the form and content of such warranties. Written warranties for consumer products costing more than ten dollars must be prominently designated as "full" or "limited" warranties. 15 U.S.C. § 2303. A "full" warranty must comply with a list of minimum standards. The party obligated under a full warranty must remedy defective products

without charge. *Id.* § 2304(a)(1). Any disclaimer of liability for consequential damages must be conspicuous, *id.* § 2304(a)(3), and state-law implied warranty liability may not be limited or disclaimed. *Id.* § 2304(a)(2). Although "limited" warranties are not subject to these standards, the Act does provide that the terms of a limited warranty shall not disclaim implied warranty liability for the "duration" of the limited warranty. *Id.* § 2308. Finally, subject to rules promulgated by the Federal Trade Commission, both full and limited warranties must "fully and conspicuously disclose in simple and readily understood language [their] terms and conditions...." *Id.* § 2302(a). These warranty obligations imposed by the Warranty Act are hereinafter alternatively referred to as the Act's "form and content standards" or "substantive obligations."

"The draftsmen believed that warranties on consumer products often were too complex to be understood, too varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection." Schroeder, *Private Actions under the Magnuson-Moss Warranty Act*, 66 Calif.L.Rev. 1, 2 (1978). Taken as a whole, the Act is concerned primarily with eliminating deceptive warranty practices.

To that end, the "form and content" standards are subject to judicial enforcement. The Justice Department, the Federal Trade Commission and individual consumers are all authorized by separate provisions of the Act to sue to enforce the substantive obligations under the Act. 15 U.S.C. §§ 2310(c) and (d). Section 2310(d)'s private cause of action for individual consumers, however, covers more than just the "form and content" provisions of the Act; it also permits consumers to sue for breach of written or implied warranties pertaining to consumer products.[1]

---

1. 15 U.S.C. § 2310(d) (1976) provides:

   (d)(1) Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obliga-

   tion under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

The cause of action provision of the Warranty Act refers to three categories of claims: breach of the substantive obligations of the Act, breach of written warranty, and breach of implied warranty.[2] "The term 'implied warranty' means an implied warranty arising under State law . . . ." *Id.* § 2301(7). Therefore, while this is in large part a federal statutory cause of action, to the extent that it adopts or incorporates state law as the source of liability for implied warranty claims,[3] it also operates as a hybrid state-federal cause of action.

The private cause of action created by the Act may be asserted in state court and, with certain significant limitations, in federal court. Section 2310(d)(1)(A)[4] affords access to the state courts for such causes of action. Additional requirements must be met to invoke federal jurisdiction under the Act. The total amount in controversy must be at least $50,000, although claims of joined plaintiffs can be aggregated to satisfy this amount, and if a plaintiff class action is to be brought in federal court, the complaint must name at least 100 plaintiffs. 15 U.S.C. § 2310(d)(3).

> (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.
> (2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.
> (3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—
> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

The novel question presented in this case is whether the cause of action provision includes personal injury claims. The prior reported cases under the Magnuson-Moss Act have involved questions of direct damages (repair, replacement, or refund) as opposed to consequential damages such as those involving personal injuries. *E. g., In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir. 1979); *Skelton v. General Motors Corp.*, 500 F.Supp. 1181 (N.D.Ill.1980); *Watts v. Volkswagen A. G.*, 488 F.Supp. 1233 (W.D. Ark.1980); *Fleming v. Apollo Motor Homes, Inc.*, 87 F.R.D. 408 (M.D.N.C.1980); *Barr v. General Motors Corp.*, 80 F.R.D. 136 (S.D. Ohio 1978); *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541 (N.D.N.Y.1978); *Barnette v. Chrysler Corp.*, 434 F.Supp. 1167 (D.Neb.1977). *But cf.: MacKenzie v. Chrysler Corp.*, 607 F.2d 1162 (5th Cir. 1979) (complaint did not allege personal injury, but did present a claim for consequential economic loss; that claim was dismissed pursuant to interpretation of applicable state law).

2. " . . . a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under this chapter or under a written warranty [or] implied warranty . . . may bring suit for damages and other legal and equitable relief. . . ." 15 U.S.C. § 2310(d)(1).

3. Moreover, 15 U.S.C. § 2301(3) incorporates aspects of state-law privity restrictions into the Magnuson-Moss Act's definition of "consumer":

> The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty or service contract.

4. For convenience, this opinion will cite the various provisions in the Act in accordance with their codified enumeration in Title 15 of the United States Code.

### A. Statutory Purpose

Reading § 2310(d) as an integrated whole, it is less than obvious that the cause of action, jurisdiction, and attorney fees provisions were designed to deal with personal injury claims arising out of defective consumer products; its central purpose is to create a new and more effective remedial mechanism for consumer claims involving comparatively small amounts of damages. Congress obviously felt that most aggrieved consumers go without redress because their individual claims are too insignificant to command representation by counsel or to warrant all the other expenses of invoking the judicial process. "Because enforcement of the warranty through the courts is prohibitively expensive, there exists no currently available remedy for consumers to enforce warranty obligations." S.Rep. No. 93–151, 93d Cong., 1st Sess. 7 (1973). Congress was also of the view that existing federal and state court procedural requirements offered too many impediments to the maintenance of consumer class actions. *See* H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7702, 7724 (criticizing requirement of individual notice to potential class members). Accordingly, Congress sought to advance the federal policies expressed in the Warranty Act by fashioning a remedial mechanism for small consumer claims. The court is authorized to award a reasonable sum to defray costs and attorney fees as part of a judgment in favor of a consumer. 15 U.S.C. § 2310(d)(2). This feature obviously was designed primarily for the benefit of consumers having small damage claims. In addition, contrary to the general rule in diversity actions, claims of joined plaintiffs, including members of a plaintiff class, may be aggregated to satisfy the $50,000 federal court jurisdictional amount, as long as each member of the plaintiff class is claiming at least $25. *Id.* § 2310(d)(3). The provision allowing aggregation of such small claims is yet another indication that the cause of action provision contemplates rather small damage claims.

While the provisions for attorney fees and federal court class actions are the most readily apparent clues to the purposes of the cause-of-action provision, there is also some highly corroborative evidence in the report of the House Commerce Committee: "In this context, your Committee would emphasize that this section [2310(d)] is remedial in nature and is designed to facilitate relief which would otherwise not be available as a practical matter for individual consumers." H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7702, 7724. There is only one variety of consumer complaint for which relief "would otherwise not be available," and that is the small warranty claim seeking repair, replacement or refund. That is the only kind of claim where the amount in controversy is ordinarily so small that individual private enforcement in the courts is "prohibitively expensive."

A personal injury case involving a substantial damage claim is not the type of claim which Congress apparently sought to remedy by § 2310(d). A judicial forum for such cases is not "otherwise unavailable"; they may be pursued without any significant impediments in the state courts, and, of course, where diversity of citizenship and the requisite amount in controversy are present, also in the federal courts pursuant to 28 U.S.C. § 1332. In personal injury cases, such as the case at bar, the likelihood of obtaining a substantial damage award is generally sufficient to justify the assumption of all the litigation expenses by the injured party. Even if the personal injury plaintiff is unable to pay these expenses, so long as the claim for relief is arguably meritorious counsel can be retained on a contingent-fee basis. Personal injury claims have always been able to command a judicial remedy.

In sum, the apparent legislative purpose of § 2310(d) is to provide a mechanism for consumer actions involving direct damages; it was not designed to reach personal injury claims.

### B. Opportunity to Cure

The most tangible demarcation of the outer limits of the cause of action afforded

by § 2310(d) is presented by a jurisdictional limitation in the very next subsection of the Act, 15 U.S.C. § 2310(e).[5] Section 2310(e), which applies to state and federal court actions alike, provides that no breach of warranty action may be instituted under § 2310(d) unless the warrantor has first been afforded a "reasonable opportunity to cure" the pertinent "failure to comply" [with the warranty]. It is highly significant that actions for breach of the substantive obligations in the Act—the "form and content" rules—are not subject to the opportunity to cure provision.[6] Thus, whatever is meant by "cure," a plaintiff alleging a failure to comply with the substantive obligations under the Act may proceed directly into court, whereas a plaintiff suing for breach of warranty must afford the warrantor an opportunity to cure before filing suit.

Plaintiffs' Magnuson-Moss claims would appear to be based entirely upon breach of warranty theories, and are therefore subject to the cure limitation. Beyond that, however, § 2310(e)'s cure provision is highly instructive on the issue whether § 2310(d)'s federal cause of action for breach of warranty includes claims for personal injury damages.

The conference committee report is adamant that no action for breach of warranty may be brought absent compliance with the cure requirement. S.Conf.Rep. No. 93–1408, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News, 7755, 7759. It would seem to follow that the types of damages recoverable in a breach of warran-

ty action under the Act must be such that they can be fully obviated by cure. Thus, the cure provision indicates the types of damages that may be recovered in the breach of warranty action created by the Act.

Unfortunately, the critical term "cure" is not defined in the statute, nor in any case law, and the legislative history is equally silent. However, the interpretive clues suggest a narrow remedial significance of the term. In general, the term "cure" denotes a process of restoration. Under the statute, "cure" is to be performed by the warrantor and, therefore, it must lie within the competence of the warrantor. The only restorative processes within the competence of a warrantor are repair, replacement or refund. In contrast, all that the warrantor can do to satisfy a personal injury claim is to compensate the victim by way of a monetary award as a substitute for physical restoration; such compensation for injury is not a "cure" within the ordinary meaning of the term. Moreover, giving the warrantor opportunity to cure—a jurisdictional prerequisite to the Act's cause of action for breach of warranty—would be an empty ritual in the context of a claim for personal injury damages, and it is not to be presumed that the Congress would be so adamant about an essentially meaningless requirement. In the specific context of 15 U.S.C. § 2310(e), therefore, "cure" must refer to repair, replacement or refund with respect to a product which proves not to be as warranted.[7]

---

5. 15 U.S.C. § 2310(e) provides in part:

No action (other than a class action or an action respecting a warranty to which subsection (a)(3) of this section applies) may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract, and a class of consumers may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply. . . .

6. Again, the cause of action created by § 2310(d) includes "failure . . . to comply with any obligation under this chapter" as well as breach of written and implied warranties; the cure requirement of § 2310(e), however, (which is a jurisdictional prerequisite to suit) applies only to actions for breach of warranty.

7. The term "cure" also appears in § 2–508 of the Uniform Commercial Code, where it plays a more limited role. The UCC "cure" provision merely affords the seller an opportunity to *replace* a nonconforming tender if the buyer rejects and the time for performance has not passed. Thus, UCC "cure" is not a factor after the product has been accepted; by contrast, Magnuson-Moss "cure" is available after ac-

Since breach of warranty actions under the Act are jurisdictionally limited by the opportunity to cure provision, this court concludes that actions are limited to claims for direct damages only, as opposed to claims for consequential damages, such as personal injuries.[8]

### C. Scope of Personal Injury Liability

The preceding interpretation of §§ 2310(d) and (e) is reinforced by the language of Section 2311(b)(2):

> Nothing in this title (other than sections 2308 and 2304(a)(2) and (4)) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State Law regarding consequential damages for injury to the person or other injury.

This provision clearly indicates that the Act creates no new cause of action for personal injury damages except in the case of the specific provisions referred to in § 2311(b)(2).

Thus, the provisions recited in parentheses *do* create additional personal injury liability. Breach of these provisions, however, is actionable under § 2310(d) as violative of the substantive obligations of the Act, rather than merely as breach of warranty, and hence is not limited by § 2310(e)'s "cure" requirement which refers only to actions for breach of warranty. Section 2308 clearly affects a warrantor's potential personal injury liability, because it restricts the power to disclaim or modify implied warranties.

Similarly, § 2304(a)(2) prohibits implied warranty disclaimers where a product is sold subject to a "full" warranty. Section 2304(a)(4), on the other hand, evidently was included in § 2311(b)(2) because of an error in draftsmanship; this provision is concerned solely with informal repair or replacement remedies and clearly has no relevance to situations involving personal injury damages. This court concludes that § 2311(b)(2) was intended to refer not to § 2304(a)(4), but, rather, to § 2304(a)(3), which requires that limitations on liability for consequential damages be conspicuously displayed on the warranty instrument.

Section 2311(b)(2) states expressly what §§ 2304 and 2308 fairly imply: Congress was content to let the question of personal injury products liability remain a matter of state-law causes of action, except to the extent that certain substantive provisions in the Magnuson-Moss Act overrule contrary state laws relating to the warrantor's ability to disclaim personal injury liability. One of the prime concerns addressed in the Act was the warranty wherein the large print giveth but the small print taketh away. Prior to passage of the Act, it was not uncommon for manufacturers of consumer products to issue documents which purported to be warranties but had the net effect of eliminating more consumer rights than they conferred. Such instruments typically promised, subject to a plethora of conditions, to repair or replace defective prod-

ceptance, for it applies upon the manifestation of a breach of warranty. Despite this distinction, it is worth noting that UCC "cure" means "replacement" and is illustrative of the limited remedial significance of the term.

**8.** Although the terms of 15 U.S.C. § 2311(b)(2) are refreshingly straightforward, in "explaining" this provision, the conference committee report offers the potentially misleading observation that a "warrantor of a consumer product is not liable [under § 2310(d)] for damages resulting from personal injury (either direct or consequential), but he could still be liable if State law imposed liability." S.Conf.Rep. No. 93–1408, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7755, 7760.

The opening clause of the quoted language indicates that nothing in § 2310(d) creates any

liability for personal injury damages. The concluding clause seemingly contradicts this idea by referring to state law. This latter reference could be interpreted in several ways, but where the terms of the statute are clear and the legislative history is highly ambiguous, it seems safer to adopt the interpretation of the legislative history that is most consistent with the plain language of the statute. The most plausible reading of the conference committee observation is that in cases where a plaintiff seeking personal injury damages is suing on the basis of an alleged violation of one of the provisions incorporated by reference in § 2311(b)(2), the scope of personal injury liability will be determined in accordance with state law unless portions of the Act supersede such aspects of state law.

ucts, but buried in the fine print were terms which effectively disclaimed all liability for personal injury damages. The Magnuson-Moss Congress viewed these practices as deceptive, and by restricting the right to disclaim implied warranties and mandating that disclaimers of personal injury liability be conspicuous, the legislators sought to eliminate the deception. *See* generally, H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7702. Moreover, Congress did create a federal cause of action and accord the federal courts jurisdiction over actions to enforce the provisions of the Act which "affect" personal injury liability.

Federal jurisdiction over personal injury claims is a function of § 2310(d)'s separate cause of action for breach of the form and content rules. As noted that particular cause of action is not subject to § 2310(e)'s opportunity to cure provision, so personal injury claims brought pursuant to one of the substantive obligations in the Act are not affected by the "cure" limitation. However, the substantive provisions which affect personal injury liability are narrow in scope, and a personal injury claimant seeking to state a claim upon which relief can be granted pursuant to the Magnuson-Moss Act must allege special jurisdictional facts. To satisfy this requirement, the plaintiff would have to be in a position to allege that the defendant sold or supplied a consumer product in violation of 15 U.S.C. §§ 2304(a)(2)–(3) or 2308, and that the plaintiff was a consumer of that product within the meaning of § 2310(d). Of course, to sue in federal court, the complaint must also allege the amount in controversy specified in § 2310(d)(3).

■ Plaintiffs' present complaint simply alleges breach of warranty as the basis for their Warranty Act claims for personal injury damages; their claims pursuant to the Warranty Act are therefore subject to dismissal for failure to state claims upon which relief can be granted. Since the existing record does not reveal whether plaintiffs would be able to allege the requisite jurisdictional facts, the court will afford them an opportunity to amend the complaint to allege, if they can do so in good faith, a claim for personal injuries that is cognizable for breach of one or more of the Act's pertinent substantive obligations.

Defendants also move to dismiss plaintiffs' prayer for attorney fees pursuant to 15 U.S.C. § 2310(d)(2), which allows the court to award attorney fees to a consumer who prevails in a Magnuson-Moss action. Since plaintiffs' claims pursuant to the Magnuson-Moss Act must be dismissed, their prayers for attorney fees must also be stricken from the complaint, with leave to renew them if plaintiffs are able to amend their complaint so as to state a claim for relief under the Warranty Act.

Since under plaintiffs' present complaint the Warranty Act does not afford a basis for federal jurisdiction, the only other basis for jurisdiction set forth in the complaint is diversity of citizenship. In view of the lack of diversity of citizenship as between plaintiffs and the Indiana defendant, North Harbor, plaintiffs' claims against North Harbor will be dismissed for lack of subject matter jurisdiction. There is no indication, however, that the absence of North Harbor as a defendant in this action will subject the remaining defendant Saf-T-Mate, to any appreciable risk of multiple or inconsistent obligations or preclude plaintiffs from obtaining complete relief. North Harbor cannot be viewed as an "indispensable party" within the meaning of Rule 19 of the Federal Rules of Civil Procedure. This action will continue with regard to plaintiffs' state law claims against the Michigan defendant, Saf-T-Mate, for it would appear that those claims can be pursued on the basis of diversity of citizenship.

Plaintiffs will be allowed to amend the complaint for purposes of stating facts essential to a Magnuson-Moss personal injury cause of action against both defendants. If the necessary amendments are forthcoming and are subsequently challenged, this court may hold an evidentiary hearing to make the appropriate determination.

## II.

■ The next question presented in the motion to dismiss is whether the complaint states a claim for the recovery of punitive damages. Under Indiana law, punitive damages may be pursued if a plaintiff is in a position to seek compensatory damages pursuant to an allegation of a basic injury and further alleges certain types of highly reprehensible conduct attendant to the acts which allegedly give rise to liability for compensatory damages. "Punitive damages may be awarded in addition to compensatory damages 'whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy.'" *Hibschman Pontiac Inc. v. Batchelor*, 266 Ind. 310, 314, 362 N.E.2d 845, 847 (1977) (citation omitted). Additionally, it must be made to appear that the public interest will be served by the deterrent effect of a punitive damages award. *Id.* at 314, 362 N.E.2d at 848. Plaintiffs' complaint makes no mention of "fraud, malice, gross negligence or oppression," and sets forth no facts from which any of those elements might be inferred.

■ Although the essential elements for an award of punitive damages must in this case be defined under Indiana law, the sufficiency of plaintiffs' complaint on this point must also be tested in light of the liberal pleading standards of the Federal Rules of Civil Procedure. Rule 9(b) requires allegations of fraud to be pleaded with particularity, but allows malice and like states of mind to be averred generally. Fraud is not necessarily the same as "malice or oppression," and is readily distinguishable from "gross negligence." Moreover, the Indiana courts have recognized that fraud need not be proven to recover punitive damages. *Prudential Insurance Co. v. Executive Estates*, Ind.App., 369 N.E.2d 1117, 1131 (1977). Therefore, Rule 9(b) does not require that the grounds for an award of punitive damages be pleaded with particularity; there remains the question whether a mere mention of punitive damages satisfies the requirement of a "general" allegation.

It would appear that Indiana views an award of punitive damages as being based upon essentially a separate claim for relief.

"Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

*Jerry Alderman Ford Sales, Inc. v. Bailey*, 154 Ind.App. 632, 638, 291 N.E.2d 92, 98 (1972), *quoting* 25 C.J.S. Damages § 120 at p. 1128–29 (1966). The quoted language suggests that the theory of recovery for punitive damages bears a close resemblance to a distinct "claim upon which relief can be granted" within the meaning of Rule 12(b)(6) of the Federal Rules of Civil Procedure. Many state courts, applying state law pleading requirements, have insisted that "the facts or elements justifying a recovery of such damages be pleaded." 25 C.J.S. Damages § 133 at p. 1192 (1966). At least two federal district courts, applying the federal rules, have similarly viewed as insufficient a bare request for punitive damages without any supporting factual allegations. *Rappaport v. Little League Baseball, Inc.*, 65 F.R.D. 545, 548 (D.Del. 1975); *Nagel v. Prescott & Co.*, 36 F.R.D. 445, 449–50 (N.D.Ohio 1964). This court concludes that plaintiffs' request for punitive damages must be supported by at least a general allegation consistent with the applicable state-law elements for an award of punitive damages. Their requests for punitive damages must be dismissed, with leave to amend, for failure to allege a claim for punitive damages.

■ The next challenge in the motion to dismiss is to Count V of the complaint, which alleges that defendants misrepresented the condition of the motorboat. Saf-T-Mate insists that this count must be dismissed as duplicative of the counts alleging breach of express warranties. Count V alleges that defendants represented "that said boat was fit for *use* by plaintiffs." (emphasis added). Count I alleges breach of express warranty "that said boat was ... fit for *use* by plaintiffs." (emphasis added). Count IV alleges breach of warranties "that the boat was fit for its particular intended purpose." There are no conceivable uses which plaintiffs could postulate pursuant to the allegations in Count V which would exceed the scope of the uses that could be postulated pursuant to the allegations in Counts I and IV. However, a "representation" is not necessarily the same as an "express warranty." Under Indiana law, a seller's representation rises to the level of an express warranty only if it becomes part of the basis of the bargain. Ind.Code § 26–1–2–313 (1976). The general introductory provision of the Indiana Uniform Commercial Code cautions that the Code does not supplant common law actions for "misrepresentation." *Id.* § 26–1–1–103. The movant has failed to cite any authority for the proposition that misrepresentation is not actionable under Indiana law, and it would appear that a misrepresentation claim is not altogether identical to an express warranty claim, although this obviously could be possible under the facts of a particular case. However, the existing record in this case is not sufficiently developed to permit that determination. The count in misrepresentation is not vulnerable to dismissal at this time.

■ Saf-T-Mate's final contention is that Count I and Count IV of the complaint, which allege breach of implied warranties, should be dismissed because they duplicate the strict products liability allegations in Count II. In support of this contention, Saf-T-Mate cites *Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376 (S.D. Ind.1976) and *Withers v. Sterling Drug, Inc.*, 319 F.Supp. 878 (S.D.Ind.1970). The

position taken in those cases, upon which defendant relies, has been criticized because "the precise requirements under each theory differ considerably." *Survey of Recent Developments in Indiana Law*, 11 Ind.L. Rev. 1, 205 n.22 (1977). For example, a strict products liability claim is not encumbered with the warranty law defenses of "privity, disclaimer, requirements of notice of defect and limitation through inconsistencies with express warranties." *Greeno v. Clark Equipment Co.*, 237 F.Supp. 427, 429 (N.D.Ind.1965). The charge of redundancy will not stand as a sufficient basis for dismissing either Count I or Count IV of the complaint at this time.

Finally, in spite of this court's refusal to dismiss the *potentially* redundant counts, it is possible that the ultimate issues in this cause could be streamlined to some extent by paring away allegations which are *truly* redundant. Rule 16 of the Federal Rules of Civil Procedure seeks to enable the court and the parties to achieve a "simplification of the issues" at the time of the pre-trial conference. If, at the time of the pre-trial conference, plaintiffs are unable to identify a meaningful distinction between the count in misrepresentation and the counts in breach of express warranties or between the counts in breach of implied warranties and the count sounding in strict liability, they should give serious consideration to abandoning any duplicative claims. *See Hampton v. Hanrahan*, 600 F.2d 600, 656 (7th Cir. 1979) (Pell, J., concurring and dissenting).

## ORDER

Accordingly, defendant Saf-T-Mate's September 12, 1980 motion to dismiss is granted in part and denied in part. Plaintiffs' claims as to defendant North Harbor will be dismissed as to North Harbor, Inc., unless an amended complaint consistent with this Memorandum is filed within thirty (30) days of the entry of this order. Plaintiffs' claims for punitive damages and attorney's fees will also be dismissed if such amendment is not filed.

Plaintiffs are hereby granted leave to amend their complaint within thirty (30) days from the date of this order for purposes of stating a claim upon which relief can be granted under 15 U.S.C. § 2310(d) and for purposes of stating a claim for the recovery of punitive damages under Indiana law. Defendant Saf-T-Mate is hereby granted leave to renew the September 12, 1980 motion by reference after the expiration of the time specified in this order for plaintiffs to amend their complaint.