369 F.3d 1102
 Robert E. Kelly; Virginia L. Kelly, Plaintiffs-Appellants,
v.
Fleetwood Enterprises, Inc., Defendant-Appellee.
 No. 03-35050.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 1, 2004 — Portland, Oregon.
 Filed May 27, 2004.
 
 COPYRIGHT MATERIAL OMITTED Danny H. Gerlt, Portland, Oregon, for the plaintiffs-appellants.
 Thomas W. Sondag, Vicki L. Smith, Lane Powell Spears Lubersky LLP, Portland, Oregon, for the defendant-appellee.
 Before: Alfred T. Goodwin, M. Margaret McKeown, and Raymond C. Fisher, Circuit Judges.
 Opinion by Judge McKeown.
 OPINION
 McKEOWN, Circuit Judge:
 
 
 1
 We consider here whether personal injury and punitive damages are cognizable under the Magnuson-Moss Warranty Act (the "Act"), 15 U.S.C. § 2301 et seq. This consumer dispute stems from Robert and Virginia Kelly's purchase of a leaky motor home manufactured by Fleetwood Motor Homes of California ("Fleetwood Motor Homes"). The Kellys sued Fleetwood Enterprises, Fleetwood Motor Homes' parent company, for damages. Because the loss of enjoyment and punitive damages the Kellys seek are not recoverable under the Magnuson-Moss Act, their federal claims do not meet the Act's $50,000 threshold amount in controversy. Nor do their claims fall within the Oregon Lemon Law, Or. Rev. Stat. § 646.315 et seq. Accordingly, we affirm the district court's dismissal of the action.
 
 BACKGROUND
 
 2
 In anticipation of their retirement, Robert and Virginia Kelly sold their home and bought a Fleetwood motor home from Olinger Travel Homes ("Olinger"). After moving into the new motor home, the Kellys discovered that it leaked. Olinger and Fleetwood Motor Homes attempted unsuccessfully to repair the leaks, and refused the Kellys' demand for repurchase of the motor home.
 
 
 3
 In the precursor round to this litigation, the Kellys sued Olinger and Fleetwood Motor Homes in Oregon state court. Under the purchase agreement between the Kellys and Olinger, the dispute with Olinger went to binding arbitration, and was ultimately resolved for $84,000 plus costs in the Kellys' favor. Fleetwood Enterprises was not a party to that suit.
 
 
 4
 Shortly after prevailing in arbitration, the Kellys filed suit against Fleetwood Enterprises in federal district court, alleging that Fleetwood had violated substantive provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(a)(1), (4), (8), (9), & (13) and 2304(a)(1) & (4). The Kellys sought approximately $27,000 in attorney's fees spent on the arbitration, $250,000 damages for loss of enjoyment of their retirement from the time the leaking began until the resolution of the arbitration, and $10 million in punitive damages. The Kellys also claimed that Fleetwood violated the Oregon Lemon Law by failing to replace or refund the value of the motor home.
 
 
 5
 Fleetwood moved to dismiss for lack of subject matter jurisdiction, contending that the damages sought by the Kellys were not recoverable under the Magnuson-Moss Warranty Act, and therefore that the claim failed to satisfy the $50,000 amount in controversy requirement of 15 U.S.C. § 2310(d)(3)(B). The district court determined that the claims did not meet the statutory requirement and dismissed the case with prejudice for lack of jurisdiction and failure to state a claim.
 
 ANALYSIS
 
 6
 We review de novo the district court's determination that it lacked subject matter jurisdiction over the Kellys' federal claims, Chang v. United States, 327 F.3d 911, 922 (9th Cir.2003), and the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Libas Ltd. v. Carillo, 329 F.3d 1128, 1130 (9th Cir.2003).
 
 I. THE MAGNUSON-MOSS WARRANTY ACT CLAIMS
 
 7
 The Magnuson-Moss Warranty Act permits "a consumer who is damaged by the failure of a supplier [or] warrantor ... to comply with any obligation under this chapter [15 U.S.C. § 2301 et seq.], or under a written warranty [or] implied warranty" to sue in United States district court provided that "the amount in controversy is [not] less than the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d).
 
 
 8
 As with suits in diversity, we look no farther than the pleadings to determine the amount in controversy unless "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Although the amount in controversy requirement in the Act may resemble a jurisdictional predicate, in fact it is properly analyzed as part and parcel of the federal claim itself. If it "appear[s] to a legal certainty that the claim" cannot meet the statutory threshold, the suit should be dismissed. Crum v. Circus Circus Enters., 231 F.3d 1129, 1131 (9th Cir.2000); cf. Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1069 (5th Cir.1984) (applying the legal certainty test to a Magnuson-Moss Warranty Act claim). Because the Kellys' claims fall into this category, we affirm the district court's dismissal.
 
 A. PERSONAL INJURY DAMAGES
 
 9
 The Magnuson-Moss Warranty Act expressly precludes recovery under the Act for personal injury, with three exceptions:
 
 
 10
 Nothing in this chapter [15 U.S.C. § 2301 et seq.] (other than sections 2308 and 2304(a)(2) and (4) of this title) shall ... impose liability on[ ] any person for personal injury, or ... supersede any provision of State law regarding consequential damages for injury to the person....
 
 
 11
 15 U.S.C. § 2311(b)(2). Of the three provisions exempted from § 2311's exclusion of personal injury claims, the Kellys accuse Fleetwood of violating only § 2304(a)(4).
 
 
 12
 On its face, it appears that the Kellys' claim falls into one of the Act's exceptions. Our examination of the statute and its structure leads us to conclude, however, that the statute contains a typographical error and that § 2304(a)(3), not § 2304(a)(4), should have been listed as one of the exemptions. The inclusion of § 2304(a)(4) was a drafting mistake.
 
 
 13
 The two federal courts to consider this issue have concluded that the evidence is strong that § 2304(a)(4) "was included in § 2311(b)(2) because of an error in draftsmanship." Gorman v. Saf T-Mate, Inc., 513 F. Supp. 1028, 1035 (N.D. Ind. 1981); see Boelens, 748 F.2d at 1065 n. 10 (agreeing with Gorman). Congress intended the Magnuson-Moss Warranty Act to create personal injury liability only under very limited circumstances. See Gorman, 513 F. Supp. at 1035 ("Congress was content to let the question of personal injury products liability remain a matter of state-law causes of action, except to the extent that certain substantive provisions in the Magnuson-Moss Act overrule contrary state laws relating to the warrantor's ability to disclaim personal injury liability."). Thus, Congress intended to create personal injury liability under the Act to address the limited circumstance of "the warranty wherein the large print giveth but the small print taketh away." Id.; see also Boelens, 748 F.2d at 1065 n. 10 (personal injury damages only available under the Act to remedy violations of the requirement "that limitations on liability for consequential damages be conspicuously displayed on the warranty instrument").
 
 
 14
 Of the three provisions listed as exceptions in § 2311(b)(2), only two fall into this category: Sections 2308 and 2304(a)(2). Both of these provisions restrict a warrantor's ability to disclaim or limit the applicability of implied warranties. See 15 U.S.C. § 2308 (stating that "[n]o supplier may disclaim or modify ... any implied warranty," subject to some qualifications); 15 U.S.C. § 2304(a)(2) ("[A] warrantor may not impose any limitation on the duration of any implied warranty on the product...."). Section 2304(a)(3) — although not listed in § 2311(b)(2) as an exception — serves a similar purpose. See 15 U.S.C. § 2304(a)(3) ("[A] warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty....").
 
 
 15
 On the other hand, § 2304(a)(4), which is listed as an exception to § 2311(b)(2), "is concerned solely with informal repair or replacement remedies and clearly has no relevance to situations involving personal injury damages." Gorman, 513 F. Supp. at 1035. Juxtaposing the dissimilarity of § 2304(a)(4) from these other provisions with the intent of Congress in drafting the Act, we conclude that the statutory reference to § 2304(a)(4) was, in fact, just one subsection off: "[Section] 2311(b)(2) was intended to refer not to § 2304(a)(4), but, rather, to § 2304(a)(3)...." Boelens, 748 F.2d at 1065 n. 10.
 
 
 16
 Thus construed, none of the Kellys' claims fall within the exceptions to § 2311(b)(2), and consequently the Act affords them no right to any damages arising from personal injury liability. See Boelens, 748 F.2d at 1065-66. The $250,000 the Kellys claim they incurred due to "loss of enjoyment of retirement" is precisely the type of relief potentially available under state law but not under the Magnuson-Moss Warranty Act. Indeed, it is difficult to imagine classifying "loss of enjoyment" as anything other than injury to the person.
 
 
 17
 The Kellys' argument that the loss of enjoyment damages are properly characterized as "noneconomic" rather than "personal injury" is a semantic distinction that bears no fruit in these circumstances. Nothing about noneconomic damages suggests that they are mutually exclusive from personal injury damages. A quick look at Oregon law illustrates that noneconomic damages are precisely the kind of damages that can stem from personal injury liability. See Or. Rev. Stat. § 18.560(2)(b) ("`Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."). Because it is clear "to a legal certainty" that the $250,000 the Kellys seek in loss of enjoyment damages are not cognizable under the Magnuson-Moss Warranty Act, that claim cannot be counted towards satisfaction of the $50,000 amount in controversy requirement. See Boelens, 748 F.2d at 1069.
 
 B. OTHER DAMAGES
 
 18
 The remaining damages are the $27,000 for attorney's fees spent on arbitration, and $10 million in punitive damages. Because punitive damages are not recoverable under the Act, and the attorney's fees alone amount to less than $50,000, we need not resolve the parties' dispute over whether the attorney's fees may be counted toward the amount in controversy requirement.
 
 
 19
 As the Kellys candidly acknowledge, no statutory or case authority establishes the availability of punitive damages for the violations of the Magnuson-Moss Warranty Act alleged in their complaint. See generally 15 U.S.C. § 2301 et seq. State law generally guides courts in determining whether punitive damages are available as a remedy for breach of warranty under the Act. See Boelens, 748 F.2d at 1069-71 (applying Texas law).
 
 
 20
 The Kellys concede that Oregon law would not sustain a punitive award for breach of warranty, but instead argue that they are entitled to $10 million to punish Fleetwood for "intentional noncompliance with substantive obligations under the Act." We disagree. To hold otherwise would require us to read into the Act a punitive purpose at odds with Congress's intent "to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1); see also Boelens, 748 F.2d at 1067 (The Act "is remedial in nature and is designed to facilitate relief which would otherwise not be available as a practical matter for individual consumers." (quoting H.R. Rep. No. 1107, 93d Cong. (1974), reprinted in 1974 U.S.C.C.A.N. 7702, 7724). Additionally, the result the Kellys advocate would permit litigants to circumvent the $50,000 threshold requirement of § 2310(d)(3)(B) simply by arbitrarily tacking a substantial sum of punitive damages onto a minimal compensatory damages claim. Because our role is to adjudicate, not legislate, we decline the Kellys' invitation to write a punitive damages provision into the Magnuson-Moss Warranty Act. The district court was correct in determining that the Kellys' claims fail to meet the amount in controversy requirement.
 
 II. THE OREGON LEMON LAW CLAIMS
 
 21
 The Kellys also seek relief against Fleetwood Enterprises under Oregon's Lemon Law, which permits recovery of up to $50,000 "if the court finds that the manufacturer did not act in good faith." Or. Rev. Stat. § 646.359(1). Recovery under this provision is conditioned on the plaintiff's success in obtaining "one of the remedies specified in [Or. Rev. Stat. §] 646.335(1)." Id. In turn, § 646.335(1) provides for two remedies: "(a) Replace the motor vehicle with a new motor vehicle; or (b) Accept return of the vehicle from the consumer and refund to the consumer the full purchase or lease price paid...." The Kellys do not seek either of these remedies in the current action; thus they cannot be "granted one of the[se] remedies" and are therefore ineligible for damages under § 646.359. Or. Rev. Stat. § 646.359(1). We affirm the district court's dismissal of the statutory claims for failure to state a claim upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6).
 
 
 22
 AFFIRMED.