Allison SCHOMBER, a minor, by her parents & next friend, Aaron SCHOMBER and Patricia Schomber, and individually and on behalf of all others similarly situated, Plaintiffs,

v.

JEWEL COMPANIES, INC., Defendant.

No. 85 C 4404.

United States District Court, N.D. Illinois, E.D.

July 11, 1985.

Robert M. Hess, Sachs & Hess, P.C., Hammond, Ind., Marvin A. Miller, Washlow, Chertow & Miller, Michael J. Freed, Much, Shelist Freed Dennenberg Ament & Eiger, Chicago, Ill., for plaintiffs and intervenors.

Fredric J. Grossman, Thomas H. Ryerson, Kevin J. Glenn, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for defendant.

William J. Harte, Kevin M. Forde, Lawrence W. Leck, Joseph S. Witkowski, Chicago, Ill., amici curiae on behalf of State Court Litigants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This class action complaint for personal injuries arises out of the 1985 salmonellosis outbreak in the greater Chicago metropoli-

tan area. Plaintiff and named class representative Allison Schomber is an Indiana resident. Defendant Jewel Companies, Inc. ("Jewel") is a New York corporation with its principal place of business in Illinois. Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332, and the amount in controversy exceeds $10,000 exclusive of interest and costs. The matter is currently before the court on the motion of defendants to dismiss, or alternatively, to stay the action, and the motion of numerous putative class members to intervene as co-plaintiffs.

### Facts

Defendant Jewel is engaged in the processing, manufacture, and distribution of food products for resale, including the sale of milk under the brand names Hillfarm and Bluebrook. In 1985, a substantial amount of Hillfarm and Bluebrook 2% Low-Fat Milk was discovered to be contaminated by salmonella bacteria. Plaintiff and other class members are individuals who drank the contaminated milk or are members of the household of those who contracted salmonellosis from drinking the contaminated milk.

The present complaint was filed on May 3, 1985. By that time, approximately 143 individual lawsuits had been filed in the Circuit Court of Cook County, Illinois, and other state courts in both Indiana and Illinois, including a number of putative class actions. All of the Cook County cases have been "consolidated" for pre-trial and discovery purposes before Judge William Quinlan in *In re Salmonella Litigation*, Master File No. 85 L 000000, with all discovery and other pretrial matters to be handled by a Committee of plaintiffs' attorneys. A motion for class certification is also pending before Judge Quinlan. While the present motions were being briefed, the Illinois Supreme Court further consolidated all state cases for discovery purposes, thus in effect "multi-districting" the Illinois cases.

### Subject Matter Jurisdiction

■ Defendants have challenged plaintiff's allegations of diversity on the grounds that the complaint states that Schomber is a resident of Indiana, but nowhere states her domicile or citizenship. Plaintiff argues that this mistake is technical only, but has offered no amendment to cure the problem. The court concludes that it has jurisdiction, but nonetheless finds that plaintiff should file an amended complaint. Failure to file an amended complaint by July 30, 1985 will be deemed as an admission that Schomber is domiciled elsewhere than in Indiana, and the complaint will be dismissed for lack of subject-matter jurisdiction.

### Motion to Intervene

Intervenors Erica Barajas et al. are Illinois and Indiana residents who also suffered personal injuries from the drinking of contaminated milk processed or sold by defendant Jewel. These parties seek leave to intervene as co-plaintiffs under Rule 24(b) to assert claims for breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B) and (3)(C), and pendent state law claims which are otherwise identical to the class claims of plaintiff Schomber. The intervenors are represented by Schomber's counsel, and are not parties (except putatively) to any of the state court actions against defendant.

■ Unlike an intervention as of right under 24(a), permissive intervention is not within a federal court's ancillary jurisdiction and must generally be supported by an independent jurisdictional basis. *See* 3 J. Moore, *Moore's Federal Practice* ¶ 24.-18[3]. Because many of the intervenors are Illinois residents, their complaint lacks diversity, and the intervenors therefore rely on the existence of a Magnuson-Moss claim to support federal jurisdiction. Defendants argue that the intervenors' Magnuson-Moss claims are insufficient as a matter of law, and therefore that the motion to intervene should be denied for lack of an independent jurisdictional basis. The court agrees.

Section 2310(d) of the Magnuson-Moss Warranty Act creates a private cause of

action, to be brought in state court, for consumers who are damaged by the failure of a "warrantor" or "supplier" to "comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). To bring such an action in federal district court, further jurisdictional requirements (which are not at issue here) must also be met. 15 U.S.C. § 2310(d)(3).

The literal language of § 2310(d) would indeed appear at first blush to create a cause of action for any party injured by a breach of implied or express warranty. However, the three reported decisions reaching the issue have all held that the Magnuson-Moss Act does not have so broad a reach. In *Gorman v. Saf-T-Mate, Inc.*, 513 F.Supp. 1028 (N.D.Ind.1981), then District Court Judge Jesse Eschbach examined the legislative history and statutory language of the Act to conclude that § 2310(d) is limited to claims for direct damages, as opposed to claims for consequential damages such as personal injuries. *Gorman* was then followed in *Bush v. American Motors Sales Corp.*, 575 F.Supp. 1581, 1582 (D.Colo.1984) and *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1064–68 (5th Cir.1984).

Because plaintiff does not make any serious argument to discredit the extensive analyses in *Gorman* and *Boelens*, but instead attempts to distinguish them, the court will only briefly summarize the bases for those decisions. Both opinions stressed the proposition that federal legislation should not be construed to effect a major expansion of federal jurisdiction absent a clear legislative intent. *Gorman*, 513 F.Supp. at 1030, *Boelens*, 748 F.2d at 1067. In *Gorman*, Judge Eschbach found that the central purpose of the Magnuson-Moss Act—"to create a new and more effective procedural mechanism for consumer claims involving comparatively small amounts of damages"—was not implicated by the typical personal injury suit. 513 F.Supp. at 1033. The *Boelens* panel, engaging in an independent analysis of the legislative history, similarly concluded that the Act was intended to encompass only "claims for

which a remedy would be otherwise unavailable." 748 F.2d at 1067.

Both opinions also laid particular stress on the express language of § 2311(b)(2):

Nothing in this title (other than sections 2308 and 2304(a)(2) and (4)) shall (A) affect the liability of, *or impose liability on,* any person for personal injury, or (B) supersede any provision of State Law regarding consequential damages for injury to the person or other injury.

(Emphasis added). As noted in *Boelens,* this section "sets up a dichotomy between personal injury claims based on a breach of the substantive provisions of §§ 2308 and 2304, which are cognizable under the MMWA, and personal injury claims based only on a breach of warranty, which are *not ....*" 748 F.2d at 1065–66 (emphasis in original). Thus, to allow a federal claim for personal injury damages based solely on a breach of warranty would be to swallow up the rule by its exceptions.

■ The court finds the reasoning of these cases persuasive and applicable to the present case. As the intervenors freely admit, the complaint in intervention involves only implied warranties which arise under state law and no substantive claims under federal law. Since the complaint in intervention seeks damages for personal injury only, § 2311(b)(2) squarely excludes any right of recovery under Magnuson-Moss, and hence there is no federal question jurisdiction which would allow this court to adjudicate these state claims if brought as an independent action. The intervenors' citations of *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513 (D.D.C.1984) and *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595 (S.D.N.Y.1982) are irrelevant: neither of those cases involved a claim for personal injury damages which would require determining the applicability of § 2311(b)(2).

■ The intervenors have suggested that the merits of the Magnuson-Moss claim cannot be finally adjudicated unless they are first allowed to intervene. This argument is without merit. Federal courts

typically examine the merits of complaints in order to decide whether leave to amend under Rule 15(a) would be futile, or whether leave to file in forma pauperis should be granted. It would ill serve judicial economy to allow permissive intervention solely for the purpose of dismissing the intervenors' complaint.

■■■ On the facts of the present case, the lack of an independent jurisdictional basis is sufficient grounds in and of itself to deny intervention. The intervenors suggest that, since they are already putative class members, allowing intervention would not destroy diversity jurisdiction, which in this case is determined by the citizenship of the named class representative Allison Schomber. *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673 (1921). The apparent implication of this argument is that intervention should be allowed in order to save time and expense to the plaintiff-litigants. Even accepting the dubious proposition that joinder of the intervenors as named parties would not destroy diversity jurisdiction, allowing such intervention would serve little purpose, since the intervenors are already putative class members and are not complaining of inadequate representation. Indeed, such a complaint could not be made since the intervenors and plaintiff share the same counsel. The purpose of requiring an independent jurisdictional basis for permissive intervention is to ensure that federal courts not surreptitiously expand the scope of their jurisdiction through the operation of Rule 24. If the present class action cannot be adequately maintained absent the joinder of non-diverse class members, the solution lies in denying class certification rather than allowing intervention.

### Motion to Dismiss or Stay

■■ Defendant argues that this court should abstain from deciding this case, or at least plaintiff Schomber's class claims, out of deference to the pending proceedings in the Illinois state courts. This motion depends for its support on the principles developed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny. In *Colorado River*, the Supreme Court noted that, despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts. *Id.* Although the Court stated that only "exceptional circumstances" would justify a stay of jurisdiction, *id.*, the court upheld the stay in the case at bar, and identified the considerations relevant to such decisions. Those considerations include the desirability of avoiding piecemeal adjudication, the inconvenience of the federal forum, and the order in which jurisdiction was obtained by the respective forums. *Id.* at 818, 96 S.Ct. at 1246. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court additionally stressed the presence or absence of federal law issues and the adequacy of the parallel state court litigation as other factors to be weighed. 460 U.S. at 23, 26, 103 S.Ct. at 941.

■■ As explained in *Moses H. Cone*, a decision to abstain on the basis of parallel state proceedings "does not rest on a mechanical checklist [of the factors identified in *Colorado River* ] but on a careful balancing of the important factors as they apply in a given case with the balance heavily weighted in favor of the exercise of jurisdiction." 460 U.S. at 16, 103 S.Ct. at 937. The *Moses H. Cone* Court further stressed that the weight to be given any one factor may vary greatly, depending on the particular factual or legal setting of the action. *Id.* The decision to abstain is within the discretion of the district court. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 663, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978).

The balancing encompassed by these two decisions can be best summarized by noting the different results of the two cases. In *Colorado River,* a suit involving federal government claims to water rights, the Court upheld a federal court's deference to state judicial proceedings based on the peculiarly local nature of the matters at stake, and on federal policy, as expressed in the McCarran Amendments, in favor of state court adjudication under such circumstances. In *Moses H. Cone,* by contrast, the Court held it error to stay an action to compel arbitration in deference to a state court contract suit. The court noted that the case involved federal law, that the federal suit had been promptly filed despite the prior initiation of the state court litigation, and that the issue to be decided in federal court—arbitrability—was severable from the larger dispute.

The Seventh Circuit has had numerous opportunities since *Colorado River* to define the scope of the "exceptional circumstances" which justify federal court deference to parallel state proceedings. In *Illinois Bell Telephone Co. v. Illinois Commerce Commission,* 740 F.2d 566 (7th Cir. 1984), the Court affirmed a district court decision not to abstain where the suit involved federal law issues and the state court suit, although initiated first, was no closer to resolution than the federal action. In *Microsoftware Computer Systems v. Ontel Corp.,* 686 F.2d 531 (7th Cir.1982), by contrast, the Court held that the district court abused discretion in not staying suit where the defendant in a New York state court action filed an identical diversity suit in the Northern District of Illinois more than one year after the state court suit was underway. The Court stressed the absence of federal questions and the grand waste of effort that would come from parallel suits in geographically distinct fora. The Court also noted that the New York defendant could have removed the state court suit to federal court, and therefore that granting the stay would cause no diminishment of that party's right to a federal forum. In *Board of Education v. Bosworth,* 713 F.2d 1316 (7th Cir.1983), the Court upheld abstention where the state court suit was well underway, and the rights to be enforced were local in nature, even though no factor of geographic inconvenience was at stake.

These cases, while adhering to the language of *Colorado River* requiring "exceptional circumstances," indicate that the matter of abstention is largely within the district court's discretion. *Microsoftware Computer Systems,* 686 F.2d at 537. The underlying inquiry is intended to "prevent duplication of judicial effort in two separate court systems and to confine the litigation to the forum able to make the most comprehensive disposition." *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228 (7th Cir. 1979). Accordingly, the courts have implicitly required a finding that the state court is better equipped to deal with the matter at hand, usually because of the extent of progress before granting a stay in deference to state proceedings. For example, where a diversity suit involved special problems in supervising international discovery, the Court upheld the district court decision not to abstain despite the absence of federal issues. *Voktas, Inc. v. Central Soya Co., Inc.,* 689 F.2d 103 (7th Cir.1982). Not always, however, is an implicit finding of state court expertise required. In *Calvert Fire Insurance Co.,* the Court noted that the "vexatious nature of the federal suit" may be properly relied on as a factor compelling deference, despite the presence of securities law claims which were within the exclusive jurisdiction of the federal court. 600 F.2d at 1234.

Plaintiff argues that the above line of cases are irrelevant since neither Schomber herself nor the intervenors are presently parties to the state court litigation. According to plaintiff, the cases are therefore not "parallel" for the doctrine of *Colorado River* to apply. While this argument has some force with respect to Schomber's individual claim, the class allegations in this suit are identical to those pending in state court except for the names of the class

representatives. Moreover, in *Colorado River* the federal court plaintiff had only been joined as a party to the state court *after* its lawsuit had been filed. In this case, plaintiff may herself become bound by the state court class and seeks to represent litigants who are presently before Judge Quinlan. The doctrine of *Colorado River* is therefore fully applicable to plaintiff's action.

Having surveyed the case law, and having found the state and federal suits to be "parallel", the court now applies the factors of *Colorado River* and *Moses H. Cone* to the present case. First is the avoidance of piecemeal litigation. Plaintiff's counsel seeks to certify a class of all consumers injured by the presence of salmonella in defendant's milk products, despite the pendency of similar class proceedings in the Illinois state courts and around 200 individual lawsuits in Illinois and two other states brought by putative class members. The burden imposed on defendant in litigating this class action in two fora would be great; indeed, the very arguments plaintiff makes for class certification support defendant's argument that the claims should be confined to a single forum as far as possible.

 The second factor, inconvenience of the federal forum, is not an issue here, as the state and federal courthouses in Chicago are only a few blocks away from each other. *See Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York,* 762 F.2d 205, 210 (2d Cir.1985). The court will therefore turn to the third factor, namely the order in which jurisdiction was obtained. As noted in *Moses H. Cone,* this factor should not be determined by a race to the courthouse but instead by the extent of progress in the respective forums. 460 U.S. at 21, 103 S.Ct. at 940.

The earliest of the state court suits predates Schomber's complaint by approximately one month. Although the state case has not advanced very far and no class has yet been certified, the state court has undertaken complex administrative procedures to oversee the action. All state court complaints have been consolidated under one number and assigned to one judge, who will oversee all pretrial matters on a consolidated basis. At present, according to the amicus brief of the state court litigants, over 200 lawsuits, including twelve class actions, have been filed. A committee of plaintiffs' attorneys has been elected to effectuate the organization and accomodation of all discovery and other pretrial matters.

Although both cases are in early stages of discovery, the state court litigation is significantly further along in this respect than the proceedings in this court. Extensive protective orders were entered in early April (before this suit was filed) to ensure the retention of milk samples and documents regarding the salmonella outbreak. Several contested hearings have been held relative to these orders, and sanctions have been obtained against defendant for the alleged failure to preserve contaminated milk in violation of the protective order.

Other discovery matters are also well underway in the state court litigation. The state court attorneys for plaintiffs have undertaken searches at defendant's Hillfarm Dairy with microbiologists to obtain samples of the contaminated milk and have visited Silliker Laboratories, a private lab retained by defendant for the purpose of analyzing those samples. The state attorneys have met with Silliker's counsel several times, have obtained document production from defendant, Silliker, and the Illinois Department of Public Health, and have filed Freedom of Information Act requests with the Food and Drug Administration and the Center for Disease Control. Finally, the Supreme Court of Illinois on June 27 ordered that the depositions of Jewel employees, witnesses and experts on the liability issue be telecast and videotaped, at Jewel's expense, to one location in each of the circuits in which such cases are pending. By contrast, almost no pretrial discovery—in terms of content or procedures—has been initiated in this court.

With respect to the issue of class certification, the difference between the two fora

is less substantial. The state court plaintiffs recently filed a consolidated class action complaint. Defendants filed an answer on July 5, 1985, and a motion to strike the class allegations on July 8th. Depositions of thirty potential class representatives are scheduled to commence this month and to conclude in early August. While some of this activity appears to have been prompted by the threat of parallel federal proceedings, and is therefore tainted by an arguably improper motive, the fact remains that early class certification is more likely to occur in the state court than here. Therefore, despite the limited gap of time between the filing of the two lawsuits, the greater progress in the state court, combined with the fact that most of the litigants are currently proceeding before Judge Quinlan, make that court a "distinctly more convenient and competent forum" for resolving the present dispute. *In re Special March, 1981 Grand Jury*, 753 F.2d 575, 580 (7th Cir.1985).

The next factor is the absence of federal law issues. This factor does not weigh in favor of abstention, but is nonetheless important since "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 103 S.Ct. at 942. In a similar vein, the Seventh Circuit has admonished that the diversity litigant is entitled to a federal forum and therefore cannot be relegated to state court on a lesser showing of judicial economy than would be required in a federal question case. *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982). Having determined that the Magnuson-Moss claims asserted by the intervenors are without merit, the court finds that the absence of federal law issues removes one countervailing factor which might otherwise override the concerns of avoiding piecemeal litigation.

The final factor articulated in *Moses H. Cone*—adequacy of the state forum—similarly presents no reason to weigh against abstention. The Illinois class action statute allows for certification over out of state plaintiffs, *Miner v. Gillette Co.*, 87 Ill.2d 7, 428 N.E.2d 478 (1981), *cert. dismissed*, 459

U.S. 86, 103 S.Ct. 484, 74 L.Ed.2d 249 (1982), and the Supreme Court just recently upheld the constitutionality of such a procedure. *Phillips Petroleum Co. v. Shutts*, —— U.S. ——, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Plaintiff suggests that only this court can provide "total oversight and judicial relief for all of the class members" but fails to identify any particulars in which the Illinois state courts are deficient. The plaintiff also suggests that only this court can preclude parallel class action certifications in other states, in disregard of the fact that this court has no power to enjoin state court litigation except under limited circumstances which would not be applicable here.

Plaintiff finally suggests that what is needed for the putative class is prompt certification, and that a class certified by the state court may be substantially different from the class which plaintiff seeks to certify in this case. For the reasons stated earlier, however, the possibility of prompt certification is greater in the state court than here. Moreover, the class which the state court litigants seeks to certify is in all material respects identical to the class described in plaintiff's complaint, except that this court only has jurisdiction over class members whose claims exceed $10,000. *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). Obviously, the chief beneficiaries of class certification in this action would be plaintiff's counsel, and not the putative class, whose interests would be more expeditiously served by certification in the litigation which is more advanced.

■ Given the complexity of this litigation and of the extraordinary steps already taken by the state court to supervise the consolidated cases, "exceptional circumstances" exist so as to justify federal court abstention. The court takes special note that the Second Circuit recently affirmed a decision to abstain under similar but even less compelling facts. *Arkwright-Boston*

*Manufacturers Mutual Insurance Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985). That case arose out of the electrical blackout occurring in midtown Manhattan in 1983 and in particular involved business losses suffered by Gimbel Brothers, Inc. On the same day that Gimbel filed a state court suit for its uninsured losses, Gimbel's insurers, who had become subrogated to Gimbel's rights in the amount of covered losses, filed a diversity action raising identical allegations. Like the case at bar, *Arkwright* involved hundreds of claims and numerous parties; the case concerned significant local interests; and the state litigation had been consolidated and assigned to a single state court judge. The case is significant since, at the time of the abstention decision, the motion for consolidation of the state court actions was only pending and almost no discovery had been undertaken. The Second Circuit nonetheless held the abstention proper based almost solely on considerations of avoiding piecemeal litigation. 762 F.2d at 211.

 Having determined that abstention is appropriate, the court now addresses the question of relief. Defendant argues that dismissal is appropriate since the difference between stay and dismissal would be "academic" under the facts of the case. *In the Matter of Special March, 1981 Grand Jury*, 753 F.2d 575, 581 (7th Cir.1985). The Seventh Circuit has repeatedly held, however, that a federal court which declines to exercise jurisdiction because of the pendency of parallel state proceedings should stay rather than dismiss the case because of the possible collateral consequences of characterizing the action as a dismissal. Failure to do so is reversible error. *Ohio River Co. v. Carrillo*, 754 F.2d 236, 238 (7th Cir.1985); *Board of Education v. Bosworth*, 713 F.2d 1316, 1322 (7th Cir.1983); *Evans Transportation Co.v. Scullin Steel Co.*, 693 F.2d 715, 717–18 (7th Cir.1982). A stay rather than dismissal is especially appropriate in the present case since plaintiff Schomber is at present only a putative party to the state court proceeding, may never become a party if class certification is denied or limited to in-state parties, and may in any event have the right to opt out of state class action proceedings to pursue her individual diversity claim here.

Accordingly, the court concludes that abstention is appropriate, but that it would be an abuse of discretion to dismiss the present case. The court therefore stays the present action pending resolution of the state court suit. This decision is, of course, subject to reconsideration if the state court denies class certification or certifies a class which would exclude Schomber. Since defendant has not filed an answer, plaintiff remains free to file a voluntary dismissal under Rule 41(a)(1) and refile in state court if she wishes.

## CONCLUSION

Defendant's motion to dismiss is denied, but the motion to stay the proceedings is granted. The motion to intervene is denied. The plaintiff should file an amended complaint by July 30, 1985 to correct her allegations of diversity or the lawsuit will be dismissed for lack of subject matter jurisdiction. The case is set for status on September 26, 1985, at which time the parties should report on what progress has been made in the state court litigation on the issue of class certification.

It is so ordered.