**UNITED STATES of America ex rel. Neil F. HARTIGAN, Attorney General of the State of Illinois and the State of Illinois, Plaintiffs,**

v.

**PALUMBO BROS., INC., et al., Defendants.**

No. 90 C 7441.

United States District Court, N.D. Illinois, E.D.

June 8, 1992.

MEMORANDUM OPINION
AND ORDER

MAROVICH, District Judge.

The *qui tam* plaintiffs, Neil F. Hartigan, former Attorney General for the State of Illinois and the State of Illinois (the "plaintiffs" or "Illinois"), filed a fifteen-count complaint against twenty-eight individuals and entities involved in the construction industry in the Midwest (the "defendants"). The complaint was filed pursuant to the False Claims Act, 31 U.S.C. § 3729 ("FCA"). The plaintiffs seek recovery of damages, penalties, interest, fees and costs on behalf of themselves and as realtors for the United States of America. The defendants have filed ten motions to dismiss pursuant to Fed.R.Civ.P. ("Rule") 12(b)(1) and (6). Each motion is based on a different legal and/or factual argument and each is adopted, in whole or in part, by the remaining defendants. For the following reasons, we dismiss Counts I, II and XI–XVII pursuant to Rule 12(b)(1) and abstain from addressing the remaining counts.

## BACKGROUND

Plaintiffs seek to recover for alleged false statements and claims made by contractors and subcontractors, including purported minority and women business enterprises, as well as affiliated corporations and individuals. This case concerns projects funded, in whole or in part, by the United States Department of Transportation ("USDOT"). The false documents were submitted to the following USDOT grantees: the Illinois Department of Transportation ("IDOT"), the City of Chicago ("Chicago"), the Wisconsin Department of Transportation ("WDOT"), the Indiana Department of Highways ("INDOH"), and the

Minnesota Department of Transportation ("MDOT").

Count I of the complaint concerns alleged false payroll and equal employment opportunity reports submitted to the IDOT in connection with an Eisenhower Expressway resurfacing job. The prime contracts on the Eisenhower job were defendants Robert R. Anderson Co., Palumbo Bros., Milburn Brothers, Inc., and Allied Asphalt Paving Company.

Count II also concerns the same Eisenhower Expressway contract. The above four prime contractors and one of their purported minority business enterprise ("MBE") subcontractors, Lo–Mar Contracting Corporation ("Lo–Mar"), significantly overstated, in written documentation to IDOT, the amount the prime contractors paid Lo–Mar for its work on the job.

Count III concerns alleged false payroll reports submitted by Lo–Mar to IDOT on a Lincoln Highway project in which Robert R. Anderson Company was the prime contractor and Lo–Mar was a purported MBE subcontractor. Count IV concerns an alleged overstatement to IDOT, a grantee of USDOT, of the net amount paid by Robert R. Anderson to Lo–Mar in connection with the same highway project.

Count V concerns the final payment agreement for a different Eisenhower Expressway job, which falsely states that Lo–Mar obtained and put in place concrete and reinforcing bars. Count V is brought against Lo–Mar and prime contractors Robert R. Anderson Co., Palumbo Bros., Milburn Brothers, Inc., and Allied Asphalt Paving Company.

Count VI concerns Palumbo Bros., Inc.'s alleged demand that one of its trucking subcontractors, Coke Contracting Co., Inc. ("Coke"), falsify a series of billing invoices before Palumbo Bros., Inc. would pay Coke. The alleged falsification involved the Eisenhower Expressway project.

Count VII concerns alleged falsifications in connection with Lo–Mar's MBE certification and recertification applications to the IDOT. The falsifications allowed Lo–Mar to receive funds originally appropriated by Congress in connection with IDOT projects.

Count VIII concerns an August 5, 1988 women's business enterprise ("WBE") certification application submitted by M & D Constructors, Inc. to the IDOT. According to the complaint, the application falsely stated that its sole owner and officer, Deborah Melesio–Piekarz, had never been an officer of a firm which had been denied MBE certification.

Counts IX and X concern alleged false December, 1987 MBE certification applications of Highway Safety Contracting Corporation. The applications omitted several prior certification decisions denying MBE status for firms having common ownership. As a result of the false certification applications, Highway Safety received funds originally appropriated by Congress in connection with a series of at least five IDOT projects.

Count XI concerns Highway Safety's alleged false MBE certification application to the WDOT. As a result of that false application, Highway Safety obtained federal funds as a purported MBE on at least two WDOT projects.

Counts XII–XV concern Hi–Gate Erectors, Inc.'s allegedly false applications seeking MBE from the IDOT, Chicago, the INDOH, and the MDOT. As a result of the false applications, Hi–Gate Erectors received federal funds as a purported MBE on a series of at least sixty-one projects funded by the United States.

Counts XVI–XXII were added on April 4, 1992 after the court allowed Illinois to amend its complaint to add defendants' sureties.

Although the defendants have raised a number of arguments in their motions to dismiss the complaint, we will address only two: whether Illinois has subject matter jurisdiction to bring this suit as *qui tam* plaintiffs; and whether the court should dismiss or, alternatively, stay these proceedings under the *Colorado River* doctrine.

1. Subject Matter Jurisdiction

■ The defendants argue the plaintiffs lack subject matter jurisdiction and

standing as *qui tam* plaintiffs to bring this action. The purpose of the FCA is to recover money fraudulently taken from the government. The FCA provides that under certain circumstances, a private party—called a *qui tam* plaintiff or private citizen realtor—may bring an action on the United States' behalf to recover fraudulently taken funds. Not all private parties, however, may bring *qui tam* actions. Moreover, the jurisdictional right to bring suit varies depending on whether the 1986 Amendments to the FCA apply retroactively or prospectively.

A. 1986 Amendments and Retroactivity

■ In order to determine whether the court has subject matter jurisdiction over this action, we must first decide whether the 1986 Amendments to the FCA should be applied retroactively or prospectively. If the text of the statute expresses a clear indication of retroactive intent, or if the legislative history clarifies whether or not the statute was intended to be applied retroactively or prospectively, then the legislative intent governs. Unfortunately, the 1986 Amendments to the FCA are silent on the issue of retroactivity. *See United States v. Murphy*, 937 F.2d 1032 (6th Cir. 1991). Further, the legislative history does not clearly indicate whether or not the Amendments were intended to be applied retroactively. *Id.* Therefore, we look to the Supreme Court for guidance.

■ The Supreme Court has not yet settled the question of whether, absent clear legislative intent, a congressional enactment should be applied retroactively or prospectively. In *Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the court articulated the proposition that "a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. Since *Bradley*, however, the Court has reconsidered its position of the issue of retroactivity. In *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Court made clear that statutes affecting rights and liabilities are presumed to have only prospective application. More recently, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court reiterated the longstanding principle that "[r]etroactivity is not favored in the law.... [and] congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471; *see also Vogel v. Cincinnati*, 959 F.2d 594, 597 (6th Cir.1992).

The Court's holding in *Bowen* is in conflict with the Court's earlier position in *Bradley*. The "apparent tension" between these two cases and their progeny was recognized by the Court in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). The Court, however, refused to resolve the conflict since it concluded that, in *Kaiser*, the evidence of legislative intent was clear; and "where intent is clear, it governs." *See Vogel*, 959 F.2d at 597.

The Seventh Circuit has recently clarified its position on the issue of retroactivity. In *Mozee v. American Commercial Marine Service, Co.*, 963 F.2d 929 (7th Cir.1992), the court held that the substantive, procedural and damage provisions of the 1991 Civil Rights Act do not apply retroactively in suits that were pending on appeal at the time of enactment. In reaching its conclusion, the court endorsed the general rule in *Bowen* that a presumption of prospective application should be accorded to substantive provisions at any stage of the proceedings. *Id.* at 936–37.

■ Only one appellate court has directly addressed the issue of the retroactive effect of the 1986 Amendments to the FCA. In *Murphy*, 937 F.2d at 1032, the Sixth Circuit held that the 1986 Amendments were to be applied prospectively because the "amendments affected substantive rights and liabilities." After discussing the "tension" between *Bradley* and *Bowen*, the court followed *Bowen* and held that the 1986 Amendments should be applied prospectively only. As the only appellate court decision on point, *Murphy* is entitled to substantial weight. As the Seventh Cir-

cuit noted in *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987):

> We have an intermediate obligation to our sister federal courts of appeals. Bearing in mind the interest in maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits, we give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can. Our district judges should, of course, do likewise with regard to such decisions....

■ Therefore, we conclude that the 1986 Amendments to the FCA have only prospective application and will not be applied to claims that were completed before October, 1986, the date when the Amendments took effect. A claim is not complete before the "last date when the Government paid any money on a particular claim." *United States v. Klein*, 230 F.Supp. 426, 442 (W.D.Pa.1964) *aff'd*, 356 F.2d 983 (3d Cir.1966).

The complaint contains fifteen counts. Counts I, II, and XI–XVII all allege fraud involving construction contracts entered into during the early 1980's. There are no allegations in the complaint or proof in the attached exhibits that any federal funds at issue in these counts were paid out to the defendants after October, 1986. Therefore, we conclude that these claims were "completed" before the 1986 Amendments came into effect. Therefore, the pre–1986 FCA applies to Counts I, II, and XI–XVII.

Although the remaining counts do not specifically allege the date when the final payment was paid out to the defendants by the Government, these counts either revolve around contracts entered into or obligations that arose after October, 1986. Since Counts III–X and XVIII–XXII were not "complete" before the effective date of the Amendments, the post–1986 provisions of the FCA apply to these claims.

## (1) Pre–1986 FCA

■ The plaintiffs have brought the action as *qui tam* plaintiffs. The pertinent *qui tam* provision of the pre–1986 FCA provides:

> (a) unless the Government proceeds with the action, the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.

31 U.S.C. § 3730(b)(4). Under the pre–1986 version of the FCA, a court lacks subject matter jurisdiction over FCA suits where the Government has knowledge of the "essential information upon which the suit is predicated" but declines to join the suit before it is filed. *See United States, ex rel. Wisconsin Dept. Health and Social Services v. Dean*, 729 F.2d 1100 (7th Cir. 1984).

In *Dean*, the Seventh Circuit addressed the issue of *qui tam* jurisdiction under the pre–1986 FCA. The court held that federal courts are without subject matter jurisdiction where the suit was based upon information in the possession of the Government at the time the suit was brought. The court reached this conclusion even though the suit was brought by the State of Wisconsin rather than a private citizen. Wisconsin was the source of the information, and Wisconsin was required under a separate statute to provide the information to the federal government. In reaching its conclusion, the court held that the jurisdictional bar contained in the *qui tam* provisions of the FCA is " 'broad enough to cover information obtained by the Government from any source whatsoever.' " *Id.* at 1105 (*quoting United States v. Aster*, 176 F.Supp. 208 (E.D.Pa.1959) *aff'd* 275 F.2d 281 (3rd Cir.1960)). *In accord, United States v. Pittman*, 151 F.2d 851 (5th Cir.1945) (holding jurisdictional bar in FCA is absolute where Government possessed essential information and Government declines to join suit).

Although the 1986 Amendments were enacted to change the result of cases like *Dean*, the Seventh Circuit has never altered its interpretation to the pre–1986 FCA. Therefore, the court's holding in. *Dean* remains good law in cases involving

claims that arose and were completed prior to the 1986 Amendments.

The fact that the Government possessed essential information prior to the time the *qui tam* action was filed is not disputed. Many of the documents Illinois now alleges are false were submitted to the Government in the first instance. Further, as early as 1985, Illinois suspected that these documents were false. Illinois law also requires that the State report to the Government any fraud the State discovers where federal funding is involved. *See* Audits of the State and Local Governments, 49 CFR 90, appendix A. Since the Government was clearly in possession of the essential information and declined to join the *qui tam* action, all claims which were completed prior to October 1986 must be dismissed for lack of subject matter jurisdiction. Thus, Counts I, II, and XI–XVII are dismissed with leave to reinstate if the plaintiffs can allege that federal funds were paid out after October 1986.

### (2) Post–1986 FCA

As to the remaining counts, Counts III–X and XVIII–XXII, the post–1986 statute applies. The 1986 Amendments altered the jurisdictional requirements for *qui tam* plaintiffs. The "principal intent behind the Amendments was to resolve the tension between … encouraging people to come forward with information and … preventing parasitic lawsuits." *United States ex rel. Stinson, Lyons, Gerlin & Busta-mante, P.A. v. Prudential Insurance, Co.*, 944 F.2d 1149, 1154 (3d Cir.1991). In an attempt to create this balance, Congress placed jurisdictional limitations on who can bring a suit on the Government's behalf.

■ The amended *qui tam* provision provides:

(4)(A) No court shall have jurisdiction under this section based upon public disclosures of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Governmental Accounting Office report, hearing, audit, or investigation, or from news media, unless the action is brought by the Attorney General or the person

bringing the suit is the original source of the information.

(B) For purposes of this paragraph "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on this information.

31 U.S.C. § 3730(e)(4)(A) & (B). In order to be an "original source" of information under the amended FCA, therefore, the party bringing the *qui tam* action must have both direct and independent knowledge of the fraud. Thus, the party's knowledge of the fraud must have been gained by virtue of a direct relationship to, or interest in, the claims. *See Stinson*, 944 F.2d at 1160–61.

The defendants argue that even if the amended version of the FCA applies, the plaintiffs still lack subject matter jurisdiction under the *qui tam* provisions of the FCA because they were not the "original" sources of the information. Therefore, the defendants contend that we should dismiss the action.

■ The 1986 Amendments reflect Congress' reaction to restrictive court interpretations such as the Seventh Circuit's holding in *Dean*. It is clear from the legislative history that Congress specifically sought to reverse the Seventh Circuit's decision in *Dean* so that suits could be brought by realtors, such as the State of Wisconsin, whose independent investigation uncovered the information of fraud on the Government. As one court noted, "the savings clause for suits brought by 'original sources' was a significant feature of the 1986 Amendment because … the amendment was precipitated by cases such as the Seventh Circuit's 1984 decision in [*Dean* ], 729 F.2d at 1106, precluding a *qui tam* suit by Wisconsin which had itself conducted the investigation of Medicaid fraud." *Stinson*, 944 F.2d at 1160.

In the instant case, the State of Illinois, like Wisconsin, conducted an extensive in-

vestigation into the alleged fraudulent practices of the major construction companies receiving both state and federal funding for state construction projects. This is not a case where the plaintiffs "simply stumble[d] across an interesting court file." *Id.* at 1161. This is a case in which Illinois' own investigation uncovered the alleged fraud. Therefore, the State has a "direct relationship to, or interest in" these claims.

We conclude that the FCA was specifically amended to provide jurisdiction for *qui tam* plaintiffs like Illinois. Therefore, the plaintiffs have standing and jurisdiction to bring Counts III–X and XVIII–XXII of their complaint.

### 2. Abstention

#### A. Concurrent Jurisdiction

Before we reach the merits of the remaining counts, however, we must first address whether state courts have concurrent jurisdiction over civil actions brought under the Federal False Claims Act, and if so, whether federal abstention is appropriate in this case. We have been unable to find a single federal or state court case that directly addresses the issue of concurrent jurisdiction under the FCA. The Supreme Court, however, has recently addressed the issue of concurrent jurisdiction in the context of federal civil RICO suits. *See Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Since we find the Court's analysis instructive, we look to *Tafflin* for guidance.

In *Tafflin,* the Supreme Court remarked that under the federal system, "states possess sovereignty concurrent with that of the federal government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Id.* 110 S.Ct. at 795. Consequently, the Court concluded that if exclusive jurisdiction is either express or implied, the state courts have jurisdiction whenever, by their own constitution, they are competent to take it. *Id.* (*citing Claf-*

*lin v. Houseman,* 93 U.S. 130, 23 L.Ed. 833 (1876)).

 In fact, exclusive federal jurisdiction over cases arising under federal law has been the exception rather than the rule. *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). Thus, there is a deeply rooted presumption in favor of concurrent jurisdiction. The presumption of concurrent jurisdiction, however, can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests. *Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981).

First, we look to the language of the statute to determine whether jurisdiction is explicitly exclusive in the federal court. Section 3732 of the FCA provides:

(a) Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

 The language of the statute is plainly permissive. *See Tafflin,* 110 S.Ct. at 796 (holding similar language in RICO statute was permissive). Clearly, federal jurisdiction is not mandatory under the FCA because the statute does not expressly suggest that jurisdiction shall be exclusive. It provides that suits of the kind described 'may' be brought in the federal district courts, not that they must be. *Tafflin,* 110 S.Ct. at 798 (*citing Dowd Box,* 368 U.S. at 506, 82 S.Ct. at 522). The mere grant of jurisdiction to the federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action. *Id.* (*citing Gulf Offshore,* 453 U.S. at 479, 101 S.Ct. at 2875). Therefore, the state court has not been divested of juris-

diction to hear FCA claims "by an explicit statutory directive."

Next, we look to see if the state court has been divested of jurisdiction "by unmistakable implication from legislative history." Our review of the legislative history reveals no evidence that Congress addressed or even considered the question of concurrent state court jurisdiction over FCA claims. Further, there is no suggestion that Congress, in its deliberations, affirmatively intended to confer exclusive jurisdiction over such claims on the federal courts. *See Tafflin*, 110 S.Ct. at 797.

Finally, state court jurisdiction has not been divested by a "clear incompatibility between state court jurisdiction and federal interests." In *Tafflin*, the court noted that factors indicating clear incompatibility include "the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiar federal claims." *Tafflin*, 110 S.Ct. at 797 (*citing Gulf Offshore*, 453 U.S. at 483–84, 101 S.Ct. at 2877–78).

Since the FCA claims are civil and not criminal, there is no overriding need for uniform interpretation. Further, FCA claims involve allegations of fraud and misrepresentations. These types of claims, which were originally based on common law, are the type of claims over which state courts presumably have great expertise. *See Gulf Offshore*, 453 U.S. at 484, 101 S.Ct. at 2878 (state judges have great expertise in applying "laws" whose governing rules are borrowed from state law).

■■ Furthermore, the fact that the FCA's procedural mechanisms are applicable only in federal court, does not mean that the FCA provides for exclusive jurisdiction. The Court has previously found concurrent jurisdiction even where federal law provided for special procedural mechanisms. *See Tafflin*, 110 S.Ct. at 799. Although "congressional specification of procedural mechanisms applicable only in federal court tend to suggest that Congress intended exclusive federal jurisdiction, it does not by itself suffice to create a 'clear incompatibility' with federal interests." *Id.*

Finally, as in *Tafflin*, allowing state courts to entertain federal FCA causes of action facilitates the enforcement of federal rights. The purpose behind the FCA, and in particular the *qui tam* provisions, is to encourage private parties to report instances of fraud on the Government. Concurrent jurisdiction will advance rather than jeopardize the federal policies underlying the statute.

■■ Illinois, however, argues that even if the FCA, itself, does not expressly provide for exclusive jurisdiction, the federal courts have exclusive jurisdiction pursuant to 28 U.S.C. § 1335. Section 1335 provides:

> The district court shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any act of Congress, ...

28 U.S.C. § 1335. Illinois argues that the FCA provides for civil penalties and, therefore, that the district court has original and exclusive jurisdiction over its complaint. We disagree.

What is labeled a penalty for one purpose is not necessarily a penalty for § 1355 purposes. The FCA is predominantly remedial in nature. A review of the legislative history reveals that the purpose behind the double damages and penalty provisions of the FCA is to make sure that the Government is made completely whole. The goal of the FCA, therefore, is to indemnify the government for all losses arising from false claims. Because of the inherent difficulty of quantifying these losses and in proving actual damages, Congress has provided for both damages and civil penalties. As the Supreme Court noted, the device of double damages plus a specific sum (i.e. the penalty) was chosen by Congress to make sure that the Government would be fully compensated for its losses. *See U.S. ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943).

Since civil penalties under the FCA are available to compensate the plaintiff for

damages which are not capable of measurement, the penalties are more similar to liquidated damages than to the type of fines, forfeitures, and penalties covered by § 1355. Concurrent state court jurisdiction, therefore, is not incompatible with the federal interests protected by § 1355.

## B. *Colorado River* Doctrine

We next address whether federal abstention is appropriate in this case. The defendants have asked the court to dismiss or, in the alternative, to stay all federal court proceedings under the *Colorado River* doctrine. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–21, 96 S.Ct. 1236, 1246–48, 47 L.Ed.2d 483 (1976), the Supreme Court held that district courts can dismiss or stay an action when there is an ongoing parallel action in state court. As the court explained, "the principles underlying the doctrine rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1558 (7th Cir.1989) (*citing Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (*quoting Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))).

 Jurisdiction, however, should not be given up lightly. Since the federal courts have a "'virtually unflagged obligation ... to exercise the jurisdiction given them,'" deference to parallel state proceedings for reasons of "wise judicial administration" is warranted only under "exceptional" circumstances. *LaDuke*, 879 F.2d at 1558 (*citing Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246). Thus, the mere fact that an action is pending in state court ordinarily is no bar to parallel federal proceedings. *See Lewis v. General Employment Enterprises, Inc.*, No. 91–0291, slip op., 1991 WL 125993 (N.D.Ill. July 2, 1991) (*citing LaDuke*, 879 F.2d at 1558). The determination of whether such exceptional circumstances exist in a given case, therefore, is committed to the sound discretion of the district court. *Id. (citing Will v.*

*Calvert Fire Ins. Co.*, 437 U.S. 655, 655, 98 S.Ct. 2552, 2553, 57 L.Ed.2d 504 (1978)).

 Before the *Colorado River* doctrine can be applied, the court must first determine whether the concurrent state and federal actions are actually parallel. *See LaDuke*, 879 F.2d at 1559; *see also Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir.1988). Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Schneider National Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir.1990). The two cases, however, do not have to be identical. *Interstate Material Corp. v. Chicago*, 847 F.2d 1285 (7th Cir.1988).

 When determining whether parallelism exists between the concurrent state and federal proceedings, the Seventh Circuit has stated: "[W]e look not for formal symmetry between the actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Harris Trust and Savings Bank v. Olsen*, 745 F.Supp. 503 (N.D.Ill.1990) (*citing Lumen Constr., Inc. v. Brant Constr., Inc.*, 780 F.2d 691, 695 (7th Cir.1985)). Thus, the issue is not whether there exists an identity of parties in both actions, but whether the federal defendants "may be bound" by the result in the state litigation under principles of collateral estoppel. *Id.* at 507; *see also Schomber v. Jewel Cos.*, 614 F.Supp. 210, 217 (N.D.Ill.1985).

Collateral estoppel applies to bar relitigation of an issue which was actually and necessarily litigated in a prior action by the same parties or their privity. In order to bar the relitigation on an issue under collateral estoppel, the parties or those in privity must have had a fair and full opportunity to litigate the issue. *Harris Trust*, 745 F.Supp. at 507.

Taking this precedent into account, we find that the state and federal suits are parallel. Both the state and federal proceedings resulted from the same multi-year investigation initiated and conducted by the office of the Illinois Attorney General.

The investigation concerned wrongdoing in connection with minority and women business enterprise programs for Illinois public agencies. More specifically, the investigation focused on allegedly fraudulent documents submitted by numerous construction contractors working on state and federally funded projects. In both the state and federal actions, Illinois seeks to recover for the false statements and misrepresentations made by predominantly the same contractors and their subcontractors (including purported MBE and WBE subcontractors) as well as affiliate corporations and individuals. Illinois asks for damages, restitution and civil penalties in both suits.

■ Although the suits share the same factual predicate and purpose, the plaintiffs contend that the actions are not parallel. First, the plaintiffs contend that the suits are not parallel because the federal complaint cites to false payroll, Equal Employee Opportunity ("EEO") reports [1] and other documents that are not included in the state complaint. The state and federal complaints, however, are both based on documents and information collected by Illinois during its multi-year investigation. Presumably all of the documents could be used as evidence in both proceedings. Therefore, the fact that the federal complaint relies on additional documents that are not a part of the state complaint would not preclude a *Colorado River* stay.

Further, Illinois argues that the cases are not parallel because each suit contains parties that are not before the other forum. The fact that the parties in the two suits are not identical also does not preclude a *Colorado River* stay. *See Lumen*, 780 F.2d at 695. Most, if not all, of the parties named in both suits are in privity with other defendants. Therefore, there is little

threat that any party's interests will not be adequately represented and protected in the state court proceeding.

Finally, Illinois contends that fifteen of the twenty-one counts contained in the state court complaint concern work done for the Metropolitan Fair and Exposition Authority in connection with the McCormick Place expansion project. Even though the remaining state counts concern the identical construction projects that form the heart of the federal complaint, Illinois maintains that the suits cannot be parallel because of these additional counts.

Most of the counts pertaining to the McCormick expansion project, however, have been dismissed by the Illinois Appellate Court.[2] Thus, the only remaining counts in the state court complaint, Counts 8–15, are those counts which deal with the Eisenhower and Lincoln Highway repavement projects and a federal civil RICO count.[3] The RICO count is premised on theories of common law fraud, Illinois statutory fraud and breach of contract.

More importantly, the state complaint seeks enforcement of the same federal statutes and regulations relating to MBE participation on federally funded highways that the federal complaint seeks to enforce. Since the FCA action is premised on similar, if not identical, allegations of fraud and breach of contract in connection with the Eisenhower and Lincoln Highway projects and Coke's involvement in those projects, the fact that the state complaint includes additional counts does not mean the suits are not parallel. In fact, the Seventh Circuit has held that actions may be parallel even though the state court complaint is "a good deal more comprehensive" than the federal case. *See Lumen*, 780 F.2d at 695. Therefore, even if the

---

1. We have dismissed the counts dealing with the EEO reports for lack of subject matter jurisdiction.

2. The state appellate court's decision not to reinstate the McCormick Place counts is pending review by the Illinois Supreme Court.

3. The federal complaint contains claims against Coke Construction. The Illinois Circuit Court

dismissed the state court counts against Coke for failure to state a claim based on fraud. The Illinois Appellate Court refused to reinstate these claims. No appeal has been taken from this decision. By including counts against Coke in its federal complaint, the defendants argue that Illinois is attempting to achieve in federal court what it has been unable to achieve in state court.

McCormick counts are reinstated, we conclude that the suits are parallel.

■ Once the court determines that the state and federal actions are parallel, the court must then decide whether to defer to the concurrent jurisdiction of the state court. There are a number of factors that the court must consider when making the decision to refrain from exercising jurisdiction over an action. These factors include:

1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability to avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; 10) the vexatious or contrived nature of the federal claim.

*Lewis,* No. 90–0291, slip op., 1991 WL 125993 (N.D.Ill. July 2, 1991).

■ No single factor, however, is determinative. *See Lumen,* 780 F.2d at 694 (*citing Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47). As the Supreme Court warned, an analysis of the relevant factors "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply to a given case, with the balance heavily weighed in favor of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, we must balance these factors to determine whether "exceptional circumstances" exist in this case which would justify abstention under *Colorado River.*

■ The *Colorado River* doctrine was created to "promote wise judicial administration giving regard to conservation of judicial resources and comprehensive disposition." *LaDuke,* 879 F.2d at 1558. The state court litigation has been pending since 1988 and has consumed hundreds of hours and thousands of pages of work. The state complaint has been dismissed by the trial court. The complaint was partially reinstated on appeal and the appellate court's decision is currently pending review before the Illinois Supreme Court.

Both the state and federal complaints are based on the same facts. The central issue in both cases is whether the documents submitted by the defendants to the IDOT and other state and federal agencies contained false information and fraudulent misrepresentations concerning the defendants' MBE and WBE status. The major difference between the two complaints it that the state complaint is premised on common law fraud, breach of contract and state statutory fraud whereas the federal complaint is based solely on violations of the FCA. In order to succeed on the merits of the FCA action, however, Illinois must prove fraud and breach of contract.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke,* 879 F.2d at 1560 (*citing Day,* 862 F.2d at 659). In this case, the identical issues will be litigated in both forums. As already stated, both cases arose out of the same investigation. Both cases were brought with the express purpose of enforcing federal laws and regulations regarding minority and women business enterprise programs. Under principles of issue preclusion, an earlier decision in one court may bind the parties in the other court. Thus, the result of simultaneous litigation of identical issues in the state and federal courts may be both "unseemly" and a "grand waste" of the efforts of the parties and the court. As the Seventh Circuit stated in *Lumen:*

When cases proceed simultaneously, the threat of efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits.

780 F.2d at 694.

Other factors also weigh in favor of exercising our power under *Colorado River.*

First, the federal complaint was not filed until almost three years after the state court obtained jurisdiction. There is no explanation for the delay in bringing the federal court action. Further, because the state court complaint contained a RICO count, it could have been originally filed in federal court. Illinois, however, chose to exercise its right to choose a forum and chose to bring the suit in state court. Additionally, there is no reason that all of the parties and all of the claims could not have been originally filed in federal court.[4]

Second, there has been substantial progress in the state court action. Even though the defendants have not answered the complaint in the state court, their motions to dismiss have been pending for over two years and have been considered by numerous state courts. Many of the counts have been dismissed and their dismissal has not been appealed. Allowing concurrent suits to continue in both forums would be inefficient and duplicative.

Additionally, there is no possibility that the federal rights sought to be protected in the FCA suit will not adequately be protected in the state court proceedings. Illinois began the state court litigation to enforce federally mandated business set-aside provisions. In doing so, Illinois placed federal statutes and regulations in the center of its state court complaint. Further, the state court complaint contains a federal civil RICO count. Thus, Illinois has acknowledged that the state court is more than capable of protecting federally created rights.

Finally, as stated earlier, FCA claims involve allegations of fraud and misrepresentations. FCA claims, therefore, are premised on common law fraud. Thus, the governing rules are originally derived from state, not federal, law.

 We conclude that the state and federal actions are parallel. We also conclude that the factors relevant to a *Colorado River* abstention analysis clearly suggest that "exceptional circumstances" exist in this case to warrant a dismissal of the federal court proceedings under *Colorado River*. Although a stay is generally the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine," *LaDuke*, 879 F.2d at 1562, we feel that judicial economy and administration would be better served if we dismiss the federal proceedings without prejudice and with leave to reinstate within forty-five days of the completion of the state court proceedings.

### CONCLUSION

For the reasons set forth above, Counts I, II, and XI–XVII are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Further, defendants' motion to dismiss pursuant to *Colorado River* is granted. Counts III–X and XVIII–XXII of the plaintiffs' federal action are hereby dismissed without prejudice and with leave to reinstate if the parties so desire within forty-five days of the completion of *People ex rel. Hartigan v. E & E Hauling, Inc.*, Circuit Court of Cook County, Illinois Docket No. 88 CH 5544.

---

**4.** Section 3732(b) of the FCA provides:
The district court shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence of an action brought under section 3730.
31 U.S.C. § 3732(b).